HERITAGE OPERATING, L.P. PLAINTIFF v.   N.C.   PROPANE   EXCHANGE,   LLC,
KENDALL T. RHINE, KENDALL L. RHINE, JANICE G. RHINE, ANTHONY L.
RHINE, CHRISTY LAMBETH, AND CRAIG LAMBETH, DEFENDANTS

No. COA11-1212

(Filed 3 April 2012)

**Appeal and Error— interlocutory orders and appeals—denial
of summary judgment—substantial right not affected**

Defendant's appeal from the trial court's order denying defendant's motion for summary judgment in a case involving a noncompete agreement was dismissed as interlocutory. The appeal did not affect a substantial right as there was no possibility of a verdict in the instant case being inconsistent with any previous judicial determinations.

Appeal by defendants from order entered 6 June 2011 by Judge Richard D. Boner in Davidson County Superior Court. Heard in the Court of Appeals 22 February 2012.

*Young Moore and Henderson P.A., by Christopher A. Page and Michael S. Rainey, and GlassWilkin, PC, by R. Charles Wilkin, pro hac vice, for the plaintiff.*

*Pinto Coates Kyre & Brown, PLLC, by Brady A. Yntema and Jon Ward, and Jackson Kelly, PLLC, by Chad J. Sullivan, for defendants N.C. Propane Exchange, LLC, Kendall T. Rhine, Kendall L. Rhine, Janice G. Rhine, and Anthony L. Rhine.*

THIGPEN, Judge.

N.C. Propane Exchange, LLC, ("N.C. Propane"), Kendall T. Rhine, Kendall L. Rhine, Janice G. Rhine, and Anthony L. Rhine (collectively, "Defendants") appeal from the denial of their motion for summary judgment on the basis that prior verdicts in Texas and Kentucky constitute res judicata and collateral estoppel. We must determine whether the trial court properly denied Defendants' motion for summary judgment. Because the present case does not involve the same factual issues and there is no possibility of inconsistent verdicts, we conclude this appeal does not affect a substantial right and dismiss this appeal as interlocutory.

HERITAGE OPERATING, L.P. v. N.C. PROPANE EXCH., LLC

[219 N.C. App. 623 (2012)]

## I. Factual and Procedural History

Plaintiff Heritage Operating, L.P. ("Heritage") owns and operates a business in Thomasville and Mooresville, North Carolina, known as Metro Lift Propane, Inc. ("Metro Lift Propane"). Kendall L. Rhine is a former officer, director, and shareholder of Metro Lift Propane and, his sons, Kendall T. Rhine and Anthony L. Rhine, are former district managers for Metro Lift Propane.

Heritage acquired the assets of Metro Lift Propane in late 2003. As part of that acquisition, Heritage entered into Non-Competition Agreements with Kendall L. Rhine, Kendall T. Rhine, and Anthony L. Rhine on 1 January 2004. Heritage paid Kendall L. Rhine $500,000.00 in exchange for his agreement to be restricted from engaging in certain activities within a seventy-five (75) mile radius of each of nine Metro Lift locations ("Restricted Areas") for a period of ten (10) years. The Restricted Areas included Charlotte, Mooresville, and Greensboro, North Carolina. Pursuant to the Non-Competition Agreement, Kendall L. Rhine agreed that he would not:

> (a) Engage in the business of the propane cylinder exchange business within a 75-mile radius of (i) any of the operations of the locations listed on Annex I (the "Restricted Area").

> (b) Solicit, service, or sell propane cylinder exchange services to any present or future propane cylinder exchange related customer or account in the Restricted Area.

> (c) Directly or indirectly solicit or hire any of the employees of [Metro Lift Propane or Metro Lift Energy, LLC] who become employees of Heritage or its affiliates . . . to become employees of any entity in which the Restricted Party is a holder of any ownership interest or to which the Restricted Party renders any service. . . .

> (d) Furnish, divulge, or make accessible to anyone any confidential or proprietary information or trade secrets ("Confidential Information") concerning the Metro Lift Business including, but not limited to customer identification, customer lists, business records and supply cost and pricing data. . . .

> (e) Provide to, arrange for, guarantee funds, or arrange for product supply or consumer tank or cylinder purchases to any person who engages in the Restricted Area.

(f) Be a member of a partnership or a stockholder, investor, officer, director, employee, agent, associate, or consultant, of any person, partnership, or corporation which does any of the acts described in the foregoing subparagraphs (a), (b), (c), (d), (e) or (f). . . .

Heritage paid Kendall T. Rhine and Anthony L. Rhine $65,734.50 each to restrict them from engaging in similar activities within a 75 mile radius of the Metro Lift business for a period of five years.

Defendant N.C. Propane Exchange, LLC, ("N.C. Propane") was organized on 17 October 2008, and its Articles of Organization were filed with the North Carolina Secretary of State on 3 November 2008. Kendall T. Rhine organized N.C. Propane and was one of its initial members/managers, as were Kendall T. Rhine's mother, Janice Rhine, Anthony L. Rhine, and Defendant Craig Lambeth. Craig Lambeth formerly worked for Heritage and had served as a District Manager for its Thomasville, North Carolina, location for a period leading up to 2 February 2009. Craig Lambeth's wife, Christy Lambeth, was the registered agent of N.C. Propane.

Heritage initiated this action on 3 February 2009, asserting causes of action for breach of contract for the Non-Competition Agreements, trade secret violations, intentional interference with contract, unfair or deceptive trade practices, and civil conspiracy, and seeking damages and injunctive relief. Also in February 2009, Heritage[1] filed actions against some of the same defendants in Texas, Kentucky, and Missouri alleging similar claims, including breach of contract of the Non-Competition Agreements as a result of the formation and operation of different propane cylinder exchange companies.

In October 2010, the Texas action went to trial, and the jury rendered a verdict finding the defendants liable on certain claims, but concluding that Heritage did not suffer any damages. On 14 December 2010, the Texas court entered a verdict in favor of the defendants and reduced the period of limitation in Kendall L. Rhine's Non-Competition Agreement to five years.

In March 2011, the Kentucky action went to trial. Kendall L. Rhine made a motion for summary judgment based on res judicata and col-

---

1. We note that the plaintiff in the Texas action was Heritage Operating, L.P., d/b/a Metro Lift Propane of Dallas, and the plaintiff in the Kentucky action was Heritage Operating, L.P., d/b/a Metro Lift Propane of Louisville. However, for ease of discussion, we refer to the plaintiff as "Heritage" in all of the three actions.

lateral estoppel, which the Kentucky court denied. The Kentucky court directed a verdict in favor of Heritage at the close of its evidence on its claim of breach of contract of Kendall L. Rhine, and the jury subsequently rendered a verdict on various other issues. Additionally, the Kentucky court awarded $941,290.00 in damages to Heritage for its claim of breach of Kendall L. Rhine's Non-Competition Agreement.

Both the Texas and Kentucky actions are currently on appeal. The Missouri action has not yet gone to trial.

Following the Texas and Kentucky trials, all of the defendants in the present action moved for summary judgment on the basis that the prior verdicts in Texas and Kentucky constitute res judicata and collateral estoppel. On 6 May 2011, the trial court entered an order denying the motion for summary judgment. Defendants now appeal the denial of that motion.

## II. Whether the Appeal Affects a Substantial Right

On appeal, Heritage contends Defendants' appeal from the trial court's order denying their motion for summary judgment is interlocutory and should be dismissed. We agree.

"The denial of summary judgment is not a final judgment, but rather is interlocutory in nature. We do not review interlocutory orders as a matter of course." *McCallum v. North Carolina Co-op. Extension Service of N.C. State University*, 142 N.C. App. 48, 50, 542 S.E.2d 227, 230 (citation omitted), *disc. review denied*, 353 N.C. 452, 458 S.E.2d 527 (2001). "As a general rule, a moving party may not appeal the denial of a motion for summary judgment because ordinarily such an order does not affect a 'substantial right.' " *Bockweg v. Anderson*, 333 N.C. 486, 490, 428 S.E.2d 157, 160 (1993) (citation omitted). In deciding what constitutes a substantial right,

> it is usually necessary to resolve the question in each case by considering the particular facts of that case and the procedural context in which the order from which appeal is sought was entered. Examples of when a substantial right is affected include cases where there is a possibility of a second trial on the same issues, and where there is a possibility of inconsistent verdicts.

*Patterson v. DAC Corp. of North Carolina*, 66 N.C. App. 110, 112-13, 310 S.E.2d 783, 785 (1984) (citations omitted).

"[T]he denial of a motion for summary judgment based on the defense of *res judicata* may affect a substantial right, making the order immediately appealable." *Bockweg*, 333 N.C. at 491, 428 S.E.2d at 161; *see also Williams v. City of Jacksonville Police Dept.*, 165 N.C. App. 587, 589-90, 599 S.E.2d 422, 426 (2004) (stating that "[t]he denial of summary judgment based on collateral estoppel, like *res judicata*, may expose a successful defendant to repetitious and unnecessary lawsuits. Accordingly, the denial of a motion for summary judgment based on the defense of collateral estoppel may affect a substantial right[.]") (quotation and quotation marks omitted). This rule is directed at "preventing the possibility that a successful defendant, or one in privity with that defendant, will twice have to defend against the same claim by the same plaintiff, or one in privity with that plaintiff." *Bockweg*, 333 N.C. at 491, 428 S.E.2d at 161. Thus, the "denial of a motion for summary judgment based upon the defense of *res judicata* may involve a substantial right so as to permit immediate appeal only where a possibility of inconsistent verdicts exists if the case proceeds to trial." *Country Club of Johnston County, Inc. v. U.S. Fidelity and Guar. Co.*, 135 N.C. App. 159, 167, 519 S.E.2d 540, 546 (1999) (quotation and quotation marks omitted), *disc. review denied*, 351 N.C. 352, 542 S.E.2d 207 (2000); *see also Community Bank v. Whitley*, 116 N.C. App. 731, 733, 449 S.E.2d 226, 227 ("A substantial right is likely to be affected where a possibility of inconsistent verdicts exists if the case proceeds to trial, but the facts of this case would not lead to such an outcome."), *disc. review denied*, 338 N.C. 667, 453 S.E.2d 175 (1994).[2]

To demonstrate that a second trial will affect a substantial right, Defendants must show "not only that one claim has been finally determined and others remain which have not yet been determined,

---

2. We acknowledge the existence of an apparent conflict in this Court as to whether the denial of a motion for summary judgment based on res judicata affects a substantial right and is immediately appealable. *Compare Country Club*, 135 N.C. App. at 167, 519 S.E.2d at 546 (holding that the "denial of a motion for summary judgment based upon the defense of *res judicata* may involve a substantial right so as to permit immediate appeal *only where a possibility of inconsistent verdicts exists if the case proceeds to trial*") (emphasis added) (quotation and quotation marks omitted) *with Moody v. Able Outdoor, Inc.*, 169 N.C. App. 80, 83, 609 S.E.2d 259, 261 (2005) (stating that "[t]he denial of a motion for summary judgment on the basis of res judicata affects a substantial right and thus, entitles a party to an immediate appeal") (citation omitted). However, our Supreme Court has addressed this issue in *Bockweg*, and, like the panel in *Country Club*, "we do not read *Bockweg* as mandating in every instance immediate appeal of the denial of a summary judgment motion based upon the defense of *res judicata*. The opinion pointedly states reliance upon *res judicata 'may* affect a substantial right.' " *Country Club*, 135 N.C. App. at 166, 519 S.E.2d at 545 (emphasis in original) (quoting *Bockweg*, 333 N.C. at 491, 428 S.E.2d at 161).

but that (1) the same factual issues would be present in both trials and (2) the possibility of inconsistent verdicts on those issues exists[.]" *Country Club*, 135 N.C. App. at 163-64, 519 S.E.2d at 544 (emphasis in original) (quotations and quotation marks omitted).

In this case, Defendants contend this appeal implicates a substantial right because of "[c]oncerns over multiple trials and inconsistent verdicts regarding the Rhine Appellants' alleged breach of the same Non-Compete Contracts[.]" Heritage argues the current action has different factual issues and there is no possibility of inconsistent verdicts because "Heritage's claims in this lawsuit are limited to injuries sustained in North Carolina, relating to the formation, financing, and operations of N.C. Propane[.]" We agree with Heritage.

In each of the three relevant lawsuits—the Texas action, the Kentucky action, and the current action—Heritage asserted claims, *inter alia*, against Kendall L. Rhine, Kendall T. Rhine, and Anthony L. Rhine for breach of the Non-Competition Agreements. However, the factual issues underlying each action are different. In each of the three lawsuits, Heritage challenges the actions of Kendall L. Rhine, Kendall T. Rhine, Anthony L. Rhine, and others in forming, financing, and operating a different propane cylinder exchange company in a different Restricted Area.

Each action involves the formation, financing, and operation of a different company that does business solely in the state the action was brought in. The factual issues underlying the Texas action involve the formation, financing, and operations of DFW Propane Exchange, LLC, ("DFW Propane") a Texas entity with its principal place of business in Texas that operates a propane cylinder exchange business in Texas. The factual issues underlying the Kentucky action involve the formation, financing, and operations of Kentuckiana Propane Exchange, LLC, ("Kentuckiana Propane") a Kentucky limited liability company with its principal place of business in Kentucky that operates a propane cylinder exchange business in Kentucky. Likewise, the factual issues underlying the present action involve the formation, financing, and operations of N.C. Propane, a North Carolina limited liability company with a registered agent and principal office in North Carolina. Each of the three above named companies is listed as a defendant only in the action filed in the state in which the company is located and does business.

Moreover, the facts regarding the formation of each propane cylinder exchange company vary. For example, Heritage alleges the

Texas location was purchased by the Rhine Brothers, LLC, a defendant in only the Texas action, and then purchased by DFW Propane from the Rhine Brothers. In comparison, Heritage alleges that N.C. Propane was formed as a new company, with Kendall T. Rhine signing the Articles of Organization on 17 October 2008. Heritage also alleges that construction of the new facility for N.C. Propane has begun in Thomasville, North Carolina. Whether the Non-Competition Agreements were breached by the formation of each company depends on the factual circumstances in each case. Similarly, whether the Non-Competition Agreements were breached by the financing and/or operation of each company depends on the specific factual circumstances in each case.

Additionally, although Heritage contends the Rhine family follows a similar pattern of obtaining confidential information from a former manager of a Heritage plant and using that information to establish and operate a new business near a Heritage business in a Restricted Area, the actions involve different former Heritage employees. The present action involves a former Heritage manager and his wife who acted only in North Carolina. It its complaint, Heritage alleges Kendall L. Rhine, Janice Rhine, Kendall T. Rhine, and Anthony L. Rhine solicited Craig Lambeth, a former district manager at Heritage's Thomasville, North Carolina, location, to assist with setting up N.C. Propane in Thomasville. Heritage alleges Craig Lambeth divulged confidential information about its business, is using its confidential information to solicit Heritage's customers, and is soliciting current employees of Heritage's Thomasville location. Heritage also alleges that Craig Lambeth's wife, Christy Lambeth, was listed as the registered agent for N.C. Propane. Neither Craig nor Christy Lambeth are parties to either the Kentucky or Texas actions.[3]

We acknowledge that all three cases involve allegations of a similar pattern of conduct by the Rhine family and an alleged breach of the same Non-Competition Agreements. However, we conclude the factual issues in the present lawsuit concerning the actions of

3. We note that in the Texas and Kentucky actions, Heritage alleges that James Marcus Withers, a defendant in both the Kentucky and Texas actions and a former district manager at Heritage's Louisville, Kentucky, plant, used confidential information gained during his employment at Heritage to assist Kendall L. Rhine, Kendall T. Rhine, Anthony L. Rhine, and other defendants unique to the other actions to solicit Heritage's customers and employees. Additionally, Heritage alleges in the Kentucky action that Angie McClish, a former Heritage employee and a defendant in only the Kentucky action, used confidential information obtained during her employment with Heritage to assist Kentuckiana Propane.

Kendall L. Rhine, Janice Rhine, Kendall T. Rhine, and Anthony L. Rhine *in North Carolina*, the formation, financing, and operations of N.C. Propane, and the actions of Craig Lambeth and Christy Lambeth are different from the factual issues determined in the Kentucky and Texas actions. Thus, the factual issues central to the instant case were not determined in either of the two previous lawsuits, and the same factual issues would not be present if the instant case continues to trial. Although the verdicts may be different, there is no possibility of a verdict in the instant case being inconsistent with any previous judicial determinations. Accordingly, we conclude this appeal does not affect a substantial right and dismiss it as interlocutory. *See Country Club*, 135 N.C. App. at 167, 519 S.E.2d at 546 (dismissing the appeal because "the current case presents no possibility of inconsistent verdicts"); *Community Bank*, 116 N.C. App. at 733, 449 S.E.2d at 227 (dismissing the appeal from the denial of a motion for summary judgment as interlocutory because "the facts of this case would not lead to" the possibility of inconsistent verdicts).

DISMISSED.

Judges CALABRIA and ERVIN concur.