An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-199

NORTH CAROLINA COURT OF APPEALS

Filed: 7 October 2014

SANDY GROVE BAPTIST CHURCH, LISA
BARNES, JACKIE HAGWOOD (on behalf
of the Family of Shelby Jean
Mosley),
    Plaintiffs

v.

BETTY JOYCE FINCH,
    Defendant.

Nash County
No. 11 CVS 1177

Appeal by plaintiffs from order entered 10 September 2013 by Judge Marvin K. Blount, III in Nash County Superior Court. Heard in the Court of Appeals 13 August 2014.

> *Newton & Lee, PLLC, by E.S. "Buck" Newton, III, for plaintiffs-appellants.*
>
> *Etheridge, Hamlett & Murray, LLP, by Ernie K. Murray, for defendant-appellee.*

HUNTER, Robert C., Judge.

Sandy Grove Baptist Church ("Sandy Grove"), Lisa Barnes ("Ms. Barnes"), and Jackie Hagwood ("Ms. Hagwood") (collectively "plaintiffs") appeal from an interlocutory order denying their motion for partial summary judgment and granting partial summary

judgment in favor of Betty Joyce Finch ("defendant"). On appeal, plaintiffs argue that the trial court erred by denying their motion for partial summary judgment because there exist no genuine issues of material fact and plaintiffs are entitled to judgment as a matter of law on their claim for rescission of deed and quiet title; they further argue that summary judgment for defendant was improper on Ms. Hagwood's claim of intentional infliction of emotional distress ("IIED") because genuine issues of material fact exist as to whether Ms. Hagwood suffered severe emotional distress as a result of defendant's conduct.

After careful review, we dismiss plaintiffs' appeal.

## Background

This cause of action concerns a 2-acre tract of land in Nash County, North Carolina deeded on 2 June 1823 from Archibald Lemon to Osborn Strickland, in his capacity as representative of the members of the Baptist Church at Lemon's Meeting House. This "indenture" was recorded at Book 11, page 101 of the Nash County Registry and reads as follows:

> This indenture made this 2nd day of June of 1823 between Arch Lamon of the County of Nash and State of North Carolina of the one part and Osbon Strickland of for and in behalf of the members of the Baptist Church at Lamon's Meeting House of the other part Witnesseth that I the said Arch Lamon doth hereby freely give grant and confirm unto

the said Osbon Strickland in behalf of the members of the said Church at Lamon's Meeting House two acres of land around the said Meeting House on the north side of the roads so as to contain an equal distance in front of the road from each end of the House for the sole purpose and accommodation of the church and for no other purpose whatever so long as the same shall be used as a place of Preaching or public worship by the Church thereof and no longer and I the said Arch Lamon doth for myself and my heirs hereby warrant and defend this said described land unto the said Osbon Strickland for the above named purpose and not otherwise against the claim of any person whatever . . . .

Sometime after the filing of this indenture, the Baptist Church at Lemon's Meeting House changed its name to Sandy Grove Baptist Church. In 1914, A.T. Strickland, A.J. Chamblee, and Geo W. Morgan, as "members and deacons of Sandy Grove Baptist Church," filed a petition in Nash County Superior Court to establish a dividing line between the tract owned by Sandy Grove and that belonging to the surrounding landowners, J.W. Finch and his wife, Alice Finch – defendant's ancestors. The petitioners identified the tract that they claimed for the church as that "conveyed by Archbale Lemon" and "recorded in book 11, at page 101, Nash Registry." The Finches did not dispute that Sandy Grove owned an adjoining tract of land; they merely disputed the metes and bounds that it claimed. A surveyor was appointed by the trial court to determine the contested boundary, and after

the survey was completed, the parties agreed to a specified dividing line. The parties then entered into a settlement agreement and the trial court entered a judgment on 9 October 1915 incorporating the surveyor's plat and adopting the metes and bounds description of the property contained therein.

According to Sandy Grove's records, the church continued to operate from 1915 until around the 1980's. The extent of the church's religious services after the 1980's is disputed. Around this time, an unidentified member of Sandy Grove entered into its records that its membership had dwindled to three members and that the last service occurred on 1 May 1985. The records also contain the following notation: "no longer able to hold services. May the Lord be with this old church house and the few sisters. Books closed."

Defendant is in her seventies; she is a member of the Finch family and testified in deposition that she lived across the Sandy Grove property within eyesight of the church her entire life. She testified that as of 2005, the building was dilapidated and in a state of severe disrepair. She claimed that the pews, pulpit, and furniture had been removed from the building, the chimney had fallen in, the roof and windows were broken, and there was an unmaintained open well on the property.

Ms. Barnes, one of the named plaintiffs, admitted that the building was in disrepair in 2005 but could neither confirm nor deny the extent of the damage.

On 19 April 2005, the descendants of J.W. and Alice Finch filed a deed in Nash County purporting to convey the Sandy Grove tract to defendant and defendant's sister ("the purported deed"). The instrument contained the following language:

> WHEREAS, by instrument dated June 2, 1823, recorded in Book 11, page 101, Nash County Public Registry, Archibald Leamon, executed an Indenture to Osborne Strickland for and on behalf of the members of the Baptist Church at Leamon's Meeting House, 2 acres of land providing in said instrument "for the sole purpose and accommodation of the church and for no other purpose whatsoever as [sic] long as the same shall be used as a place of preaching or public worship by the church whereas, and no longer"; and,
>
> WHEREAS, through various ownership changes and transfers through the years of the parent tract of land from which the 2 acre tract was carved, the Grantors herein are the owners of that portion of the 1823 parent tract from which the hereinafter described 2 acres was carved, and,
>
> WHEREAS, the 2-acre tract of land has been abandoned, the structure thereon is in disrepair, no church service has been held or conducted in at least 40 years, that the last church to use the facility as a church and place of worship was the Sandy Grove Baptist Church, which ceased to exist more than 40 years ago and there are no known Trustees, Board of Deacons, Pastors, church

> officials or any other officers of the church and none has been known to exist for more than 40 years; and,
>
> WHEREAS, by the reverter (reversion) clause in said 1823 instrument hereinabove mentioned, title to the lands herein has reverted to the Grantors herein and the Grantors desire to convey their interest in the lands described herein to the Grantees[.]

Defendant's sister died in 2006, leaving defendant with the entire interest in the tract. After continued years of disrepair, defendant had the Sandy Grove building demolished in 2011 and posted "No Trespassing" signs throughout the grounds.

Ms. Hagwood testified in deposition that her aunt had indicated in writing a desire to be buried at Sandy Grove cemetery. She testified that after her aunt died in January 2011, she tried to arrange a burial at Sandy Grove but was refused access to the cemetery by defendant. Ms. Hagwood further testified that as a result of being unable to fulfill her aunt's wishes, she experienced bouts of anxiety, hopelessness, headaches, and lost sleep.

On 11 July 2011, plaintiffs filed suit against defendant. In their amended complaint, plaintiffs listed six total claims: (1) declaratory judgment that Sandy Grove is the owner of the disputed property in fee simple; (2) rescission of the purported

deed to defendant and quiet title for Sandy Grove; (3) access to cemetery under N.C. Gen. Stat. § 65-102 (2013); (4) trespass and damage to property; (5) intentional infliction of emotional distress on Ms. Hagwood; and (6) injunctive relief. On 30 November 2012, plaintiffs filed a motion for summary judgment. Defendant filed a cross motion for summary judgment for all claims on 13 February 2012. According to plaintiffs' Motion for Specific Findings entered 30 August 2013, a hearing was held on the parties' motions for summary judgment on 24 June 2013. No transcript of this hearing has been filed with this Court.

On 10 September 2013, the trial court entered an order denying plaintiffs' motion for "partial summary judgment" and granting summary judgment for defendant on Ms. Hagwood's IIED claim. The trial court ruled that there existed genuine issues of material fact precluding summary judgment for defendant on the remaining claims and precluding summary judgment for plaintiffs on the unspecified claims for which their purported motion for "partial" summary judgment applied. It is unclear from the order which of the six claims were the subject of plaintiffs' motion for partial summary judgment. Plaintiffs filed timely notice of appeal from this order.

**Discussion**

## I. Grounds for Appellate Review

Plaintiffs first argue that the trial court's interlocutory order is immediately appealable because a substantial right would be deprived without immediate review. We disagree.

"An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950). Orders that either deny summary judgment or grant partial summary judgment are interlocutory. *See North Carolina Dept. of Transp. v. Page*, 119 N.C. App. 730, 734, 460 S.E.2d 332, 334 (1995). "Generally, there is no right of immediate appeal from interlocutory orders and judgments." *Goldston v. Am. Motors Corp.*, 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990). However, immediate appeal of an interlocutory order is available where: (1) the trial court certifies the case for appeal pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b) (2013); or (2) the order deprives the appellant of a substantial right under N.C. Gen. Stat. § 1-277(a) (2013) which would be lost without immediate review. *Page*, 119 N.C. App. at 734, 460 S.E.2d at 334.

Because the trial court here did not certify this case for immediate appeal under Rule 54(b), plaintiffs argue that immediate review is appropriate because the trial court's order affects a substantial right. At the outset, we note that at no point in plaintiffs' brief do they attempt to argue how a substantial right would be deprived without immediate review of the trial court's order granting partial summary judgment for defendant on Ms. Hagwood's IIED claim. "It is not the duty of this Court to construct arguments for or find support for appellant's right to appeal from an interlocutory order; instead, the appellant has the burden of showing this Court that the order deprives the appellant of a substantial right . . . ." *Jefferys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 380, 444 S.E.2d 252, 254 (1994). Thus, we dismiss plaintiffs' arguments pertaining to the trial court's grant of summary judgment on the IIED claim. *See id.; see also State ex rel. City of Charlotte v. Hidden Valley Kings*, __ N.C. App. __, __, __ S.E.2d __, __ (2014) (dismissing appeal because the appellants failed to argue that a substantial right would be irrevocably lost absent immediate review of an interlocutory order).

Additionally, we dismiss the remaining portions of the appeal because plaintiffs have failed to demonstrate how the trial court's denial of their motion for partial summary judgment affects a substantial right.

"The purpose of the doctrine of *res judicata* is to protect litigants from the burden of relitigating previously decided matters and to promote judicial economy by preventing unnecessary litigation." *Holly Farms Inc. v. Kuykendall*, 114 N.C. App. 412, 417, 442 S.E.2d 94, 97 (1994). "Under the companion doctrine of collateral estoppel, also known as 'estoppel by judgment' or 'issue preclusion,' the determination of an issue in a prior judicial or administrative proceeding precludes the relitigation of that issue in a later action . . . ." *Urquhart v. East Carolina Sch. Of Med.*, __ N.C. App. __, __, 712 S.E.2d 200, 204 (2011).

"Ordinarily, the denial of a motion for summary judgment does not affect a substantial right so that an appeal may be taken." *Motyka v. Nappier*, 9 N.C. App. 579, 582, 176 S.E.2d 858, 859 (1970). However, the denial of a motion for summary judgment based on the defenses of *res judicata* or collateral estoppel may affect a substantial right, making the order immediately appealable. *See Bockweg v. Anderson*, 333 N.C. 486,

491, 428 S.E.2d 157, 161 (1993); *see also Country Club of Johnston Cnty., Inc. v. U.S. Fidelity and Guar. Co.*, 135 N.C. App. 159, 167, 519 S.E.2d 540, 546 (1999).

This Court has recently clarified that immediate appeal from such orders is not automatically allowed; the appellant still bears the burden of demonstrating how the order affects a substantial right:

> We acknowledge the existence of an apparent conflict in this Court as to whether the denial of a motion for summary judgment based on *res judicata* affects a substantial right and is immediately appealable. However, our Supreme Court has addressed this issue in *Bockweg*, and, like the panel in *Country Club*, "we do not read *Bockweg* as mandating in every instance immediate appeal of the denial of a summary judgment motion based upon the defense of *res judicata*. The opinion pointedly states reliance upon *res judicata* '*may* affect a substantial right.'" *Country Club*, 135 N.C. App. at 166, 519 S.E.2d at 545 (emphasis in original) (quoting *Bockweg*, 333 N.C. at 491, 428 S.E.2d at 161).

*Heritage Operating, L.P. v. N.C. Propane Exch., LLC*, __ N.C. App. __, __ n.2, 727 S.E.2d 311, 314 n.2 (2012). Thus, a party seeking immediate appellate review of an order denying a motion for summary judgment based on *res judicata* or collateral estoppel must show "not only that one claim has been finally determined and others remain which have not yet been determined,

but that (1) the same factual issues would be present in both trials *and* (2) the possibility of inconsistent verdicts on those issues exists[.]" *Heritage Operating, L.P.*, __ N.C. App. at __, 727 S.E.2d at 314-15 (quoting *Country Club of Johnston Cnty.*, 135 N.C. App. at 167, 519 S.E.2d at 546 (emphasis in original)).

Here, plaintiffs contend that the doctrines of *res judicata* and collateral estoppel both work to prevent defendant from contesting plaintiffs' claim of quiet title. Specifically, plaintiffs argue that ownership of the property in question was "previously resolved between the plaintiff Sandy Grove Baptist Church and J.W. Finch" in the 1915 judgment. Thus, plaintiffs argue because J.W. Finch is the grandfather of defendant and is defendant's predecessor in title, defendant cannot now argue that she has title to the land upon which Sandy Grove rests. Plaintiffs further contend that if this matter is allowed to go to trial, there exists the risk of a verdict inconsistent with the 1915 judgment, which set the boundary between Sandy Grove's land and J.W. Finch's land. We do not find these arguments persuasive.

In 1915, members and deacons of Sandy Grove entered into a consent judgment with J.W. Finch to determine the boundary between their respective tracts of land. At no point was the

type of interest that Sandy Grove held in the land in question. In contrast, when defendant was purportedly deeded the land upon which Sandy Grove rests in 2005, the basis for that conveyance was the contention that Sandy Grove had been deeded a fee simple determinable by Archibald Lemon in 1823, not a fee simple absolute. "A fee simple determinable estate terminates automatically upon the occurrence of [an] event, which gives rise to [a] reverter[.]" *City of Charlotte v. Charlotte Park & Recreation Comm'n*, 278 N.C. 26, 31, 178 S.E.2d 601, 605 (1971). "To create a fee simple determinable, the conveyance to the grantee, A, must contain a phrase such as 'so long as,' 'as long as,' 'while,' 'during,' or 'until.'" 118 Am. Jur. Proof of Facts 3d. 125. Defendant contends that the language in the 1823 deed, "so long as the same shall be used as a place of Preaching or public worship by the Church thereof and no longer," created a fee simple determinable that would revert title in the land to the grantor should the property no longer be used as a place of worship by Sandy Grove. Thus, because Sandy Grove's books were closed in the mid-1980's and the building itself fell into severe disrepair, defendant contends that Sandy Grove lost title in the land because it no longer used the tract as a place of preaching or public worship.

Regardless of the merits of these contentions, we conclude that there is no risk of a verdict inconsistent with the 1915 judgment that would be sufficient to allow immediate appeal from the trial court's order. Even if this matter were to go to a jury and Sandy Grove were to lose title in the land as a result of its failure to use the tract as a place for preaching or public worship, such a result would not conflict with the 1915 judgment setting a boundary between Sandy Grove's and J.W. Finch's respective tracts. At no point in the 1915 proceeding was the type of interest in Sandy Grove's tract addressed, presumably because at the time it was a functioning church with multiple members and deacons. Thus, the facts and arguments in the 1915 dispute are distinct and separate from those raised here, removing the risk that an inconsistent verdict will be entered should this matter proceed to trial.

Accordingly, because plaintiffs, as the appellants, have failed to carry their burden of demonstrating "the possibility of inconsistent verdicts," *Heritage Operating, L.P.*, __ N.C. App. at __, 727 S.E.2d at 314-15, they have also failed to show how the trial court's order affects a substantial right. Thus, dismissal of this appeal is proper. *See Country Club of Johnston Cnty.*, 135 N.C. App. at 167, 519 S.E.2d at 546 (dismissing

appeal taken from the denial of a motion for summary judgment because the plaintiff could not demonstrate a possibility of inconsistent verdicts if the case were to proceed to trial, and thus failed to show how the order affected a substantial right warranted immediate appeal).

## Conclusion

For the foregoing reasons, we dismiss plaintiffs' appeal from the trial court's interlocutory order.

DISMISSED.

Judges DILLON and DAVIS concur.

Report per Rule 30(e).