CARLE v. WYRICK, ROBBINS, YATES & PONTON, LLP

[225 N.C. App. 656 (2013)]

SCOTT B. CARLE AND JOHN SIMMONS, PLAINTIFFS
v.
WYRICK, ROBBINS, YATES & PONTON, LLP, AND MADISON E. BULLARD, JR.,
DEFENDANTS

No. COA12-1093

Filed 5 March 2013

**Statutes of Limitation and Repose—professional negligence—claim barred**

Plaintiffs' legal malpractice claim was barred by the statute of repose where plaintiffs commenced their action more than four years after the last act of defendants giving rise to plaintiff's cause of action.

Appeal by plaintiffs from order entered 28 June 2012 by Judge Edwin G. Wilson, Jr., in Superior Court, Wake County. Heard in the Court of Appeals 14 February 2013.

*Higgins Benjamin, PLLC, by Robert G. McIver, for plaintiffs-appellants.*

*Patterson Dilthey, LLP, by Ronald C. Dilthey, for defendants-appellees.*

STROUD, Judge.

Scott Carle and John Simmons ("plaintiffs") filed a complaint against the law firm of Wyrick, Robbins, Yates, and Ponton, LLP, and attorney Madison Bullard, Jr. ("defendants") on 25 January 2010 alleging professional negligence, breach of fiduciary duty, negligent or intentional misrepresentation, constructive fraud, and breach of contract. Plaintiffs appeal from an order entered 28 June 2012 in Superior Court, Wake County, granting defendants' motion for summary judgment.

I. Background

Plaintiffs were joint owners of East Coast Drilling and Blasting, Inc. ("East Coast"). In 2004, they decided to create an employee stock ownership trust ("ESOP Trust") and to "monetize" their stock in East Coast. To do so, they enlisted the help of a variety of advisors, including a CPA and a separate financial adviser to coordinate the transaction. Plaintiffs retained defendants to represent their personal interests in the transaction. Other firms were retained to represent plaintiffs' corporation and the ESOP trustee. On the advice of defendants, plaintiffs

CARLE v. WYRICK, ROBBINS, YATES & PONTON, LLP

[225 N.C. App. 656 (2013)]

later retained the firm of Holland and Knight to provide an opinion letter on the tax implications of the transaction.

The transaction was supposed to be structured so that plaintiffs would be able to "monetize" their corporate stock while avoiding the capital gains taxes normally associated with doing so. The transaction consisted of three parts: (1) the sale and transfer of the East Coast stock to the ESOP trust, (2) a one-day loan of $8,000,000 to East Coast to finance the transfer, and (3) the monetization of the sale price to defer the taxes payable on the sale through the purchase of qualified replacement securities ("QRS").

Plaintiff Carle sold 9,000 shares of his East Coast stock to the ESOP Trust in exchange for $9,022,410, consisting of $1,822,410 in cash and a promissory note worth $7,200,000 from East Coast. Plaintiff Simmons sold 1,000 shares of his stock to the ESOP Trust for $1,002,490, consisting of $202,500 in cash and a promissory note worth $799,990 from East Coast. In order to avoid capital gains taxes, plaintiffs had to reinvest the face dollar amount of the sale price in QRS within 12 months of the closing date of the sale. If plaintiffs held the QRS until death they may have been able to avoid capital gains taxes on the transaction under section 1042 of the Internal Revenue Code.

To acquire the necessary QRS, plaintiffs contracted with Optech Ltd., which was controlled by Derivium Capital, LLC, to provide a loan for 90% of the value of the QRS, with the QRS pledged as collateral. Around $9,000,000 in QRS were to be purchased by Optech with approximately $1,000,000 that plaintiffs deposited with the Lehman Brothers financial services firm and the approximately $8,000,000 loan from Optech. Plaintiffs have alleged that Optech did not actually hold the QRS, but "churned" their account by selling the QRS it was supposed to hold as collateral through Morgan Keegan, its broker-dealer, then reinvesting 90% of the proceeds in plaintiffs' Lehman account to make it appear that the amount of QRS was growing, and repeating the process, while charging plaintiffs fees and commissions at each step.

Plaintiffs received a notice from the Internal Revenue Service (IRS) on or about 9 October 2007 informing them that the QRS would not in fact be exempt from the capital gains tax because the securities had actually been sold. In 2010, plaintiffs accepted a closing agreement with the IRS to resolve their outstanding tax issues. Plaintiff Carle was assessed a tax deficiency of $1,414,413 for tax year 2005 and $180,334 for tax year 2006. Plaintiff Simmons was assessed

a deficiency of $155,020 for tax year 2005 and $22,926 for tax year 2006. Plaintiffs were also assessed fees and penalties.

## II. Procedural History

Plaintiffs separately commenced actions on 17 July 2009 by issuance of a summons along with an application for extending time to file the complaint under N.C. Gen. Stat. § 1A-1, Rule 3(a).[1] The initial order extending time to file the complaint only allowed plaintiffs an additional 10 days, although the application requested 20 additional days, as provided by Rule 3. On 6 August 2009, Plaintiffs then filed a motion under N.C. Gen. Stat. § 1A-1, Rule 60(b) for relief from the initial order providing only ten days on the basis of mistake and excusable neglect. Plaintiffs simultaneously filed their complaint and amended applications to allow the filing of the complaint on or before 6 August 2009, as plaintiffs could have done if the initial order were drafted correctly. An assistant clerk of Superior Court signed the application and order on or about 6 August 2009. The Superior Court, however, denied plaintiffs' Rule 60(b) motion by order entered on or about 25 January 2010; plaintiffs did not file notice of appeal from that order. Plaintiffs then voluntarily dismissed the consolidated complaint on 25 January 2010 and jointly re-filed the present complaint that same day.

On appeal, plaintiffs make no argument that the 2010 complaint relates back to the 17 July 2009 summons, nor did they appeal from the trial court's order denying their Rule 60 motion in the 2009 action. They state that the action was commenced "by the filing of a complaint and issuance of Summonses on 25 January 2010." Therefore, we will consider 25 January 2010 the date that plaintiffs commenced the present action.

The Superior Court, Wake County, dismissed all of plaintiffs' claims other than professional negligence, but denied defendants' motion to dismiss as to that claim by order entered 1 November 2010. After the parties took depositions and conducted discovery, defendants moved for summary judgment on the professional negligence claim. The trial court granted defendant's motion for summary judgment by order entered 28 June 2012. Plaintiffs filed written notice of appeal to this Court from the 28 June order on 6 July 2012.

---

1. Plaintiffs also filed arbitration claims with the Financial Industry Regulatory Authority against their financial advisers, Lehman Brothers, Morgan Keegan, and others concerning this same transaction.

### III. Summary Judgment

Plaintiffs argue on appeal that the trial court erred in granting defendants' motion for summary judgment. They contend that their complaint is not barred by the applicable statute of limitations because their cause of action did not accrue until the IRS proceedings were completed on or about 26 May 2010. They further argue that there is a genuine issue of material fact as to defendants' role in the transaction, especially whether defendants had agreed to vet the cross-parties and analyze the feasibility of the Optech proposal, and whether defendants actually provided tax advice despite the provision of the engagement letter explicitly excluding such advice from the scope of representation. For the following reasons, we hold that plaintiffs' claim is barred by the statute of repose under N.C. Gen. Stat. § 1-15(c) and affirm the trial court's order. Therefore, we do not reach plaintiffs' second argument.

A. Standard of Review

> On appeal from summary judgment, the applicable standard of review is whether there is any genuine issue of material fact and whether the moving party.is entitled to a judgment as a matter of law. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law. If there is any evidence of a genuine issue of material fact, a motion for summary judgment should be denied. We review the record in a light most favorable to the party against whom the order has been entered to determine whether there exists a genuine issue as to any material fact.

*Smith v. Harris*, 181 N.C. App. 585, 587, 640 S.E.2d 436, 438 (2007) (citations, quotation marks, and brackets omitted).

B. Statute of Limitations and Statute of Repose

Plaintiffs' only claim is one of legal malpractice. The statutes of limitations and repose for professional malpractice claims, including legal malpractice claims, are set out in N.C. Gen. Stat. § 1-15(c):

> Except where otherwise provided by statute, a cause of action for malpractice arising out of the performance of or failure to perform professional services shall be

deemed to accrue at the time of the occurrence of the last act of the defendant giving rise to the cause of action: Provided that whenever there is bodily injury to the person, economic or monetary loss, or a defect in or damage to property which originates under circumstances making the injury, loss, defect or damage not readily apparent to the claimant at the time of its origin, and the injury, loss, defect or damage is discovered or should reasonably be discovered by the claimant two or more years after the occurrence of the last act of the defendant giving rise to the cause of action, suit must be commenced within one year from the date discovery is made: Provided nothing herein shall be construed to reduce the statute of limitation in any such case below three years. Provided further, that in no event shall an action be commenced more than four years from the last act of the defendant giving rise to the cause of action[.]

N.C. Gen. Stat. § 1-15(c) (2009).

"This statute creates, among other things, a statute of repose which is not measured from the date of injury, but [from] the date of the last act of the defendant giving rise to the cause of action or from substantial completion of some service rendered by defendant." *Garrett v. Winfree*, 120 N.C. App. 689, 693, 463 S.E.2d 411, 414 (1995) (citation and quotation marks omitted); *see State ex rel. Long v. Petree Stockton, L.L.P.*, 129 N.C. App. 432, 443-44, 499 S.E.2d 790, 797-98 (measuring statute of repose from the last allegedly negligent acts as pled in the plaintiff's complaint), *disc. rev. granted in part, dismissed in part*, 558 S.E.2d 190 (N.C. 1998), *disc. rev. dismissed as improvidently granted*, 350 N.C. 57, 510 S.E.2d 374 (1999).

"Regardless of when plaintiffs' claim might have accrued, or when plaintiffs might have discovered their injury, because of the four-year statute of repose, their claim is not maintainable unless it was brought within four years of the last act of defendant giving rise to the claim." *Hargett v. Holland*, 337 N.C. 651, 655, 447 S.E.2d 784, 788 (1994) (citations omitted). Continued representation after the last act giving rise to the claim does not toll or extend the statute of repose. *See Chase Development Group v. Fisher, Clinard & Cornwell, PLLC*, ___ N.C. App. ___, ___, 710 S.E.2d 218, 225 (2011) ("Continuing representation of a client by an attorney following the last act of negligence does not extend the statute of limitations."); *Teague v. Isenhower*, 157 N.C. App. 333, 338, 579 S.E.2d 600, 604 (measuring the

statute of limitations from the last allegedly negligent acts at trial, not the later appellate representation as to which there were no allegations of negligence), *disc. rev. denied*, 357 N.C. 470, 587 S.E.2d 347 (2003). "If the action is not brought within the specified period, the plaintiff literally has no cause of action. The harm that has been done is *damnum absque injuria-a* wrong for which the law affords no redress." *Goodman v. Holmes & McLaurin Attorneys at Law*, 192 N.C. App. 467, 474, 665 S.E.2d 526, 531 (2008) (citation and quotation marks omitted).

Plaintiffs argue that their claim is not barred because this Court held in *Snipes v. Jackson*, 69 N.C. App. 64, 316 S.E.2d 657, *disc. rev. denied*, 312 N.C. 85, 321 S.E.2d 899 (1984), that a malpractice action against an accountant and a tax attorney did not accrue until the IRS assessed a tax deficiency against the plaintiff. *Snipes* differs from the present case in one important respect. *Snipes* only addressed the statute of limitations, not the statute of repose, and only addressed when the plaintiff's action accrued. *See id.* at 71, 316 S.E.2d at 661. This distinction is vital in the present case. Unlike the statute of limitations, the statute of "repose serves as an unyielding and absolute barrier that prevents a plaintiff's right of action even before his cause of action may accrue, which is generally recognized as the point in time when the elements necessary for a legal wrong coalesce." *Hargett*, 337 N.C. at 655, 447 S.E.2d at 788 (citation and quotation marks omitted).[2]

In order to decide whether the statute of repose bars plaintiffs' claim we must determine when the last act of alleged negligence took place. *Garrett*, 120 N.C. App. at 693, 463 S.E.2d at 414. To determine when the last act or omission occurred we look to factors such as the contractual relationship between the parties, when the contracted-for services were complete, and when the alleged mistakes could no longer be remedied. *See, e.g., Babb v. Hoskins*, ___ N.C. App. ___,

---

2. We note that if plaintiffs were correct that their action accrued in May 2010, their complaint filed in January 2010 would have been premature and subject to dismissal because "[t]here cannot be an action or proceeding, as those terms are used in Chapter 1 of the General Statutes, until a cause of action accrues." *Ocean Hill Joint Venture v. North Carolina Dept. of Environment, Health and Natural Resources*, 333 N.C. 318, 323, 426 S.E.2d 274, 277 (1993); *see Harshaw v. Mustafa*, 321 N.C. 288, 290, 362 S.E.2d 541, 542 (1987) (holding that the trial court should have granted the defendants' motion to dismiss because the complaint had been filed before the cause of action accrued); N.C. Gen. Stat. § 1-15(a) (2009) ("Civil actions can only be commenced within the periods prescribed in this Chapter, *after the cause of action has accrued*, except where in special cases a different limitation is prescribed by statute." (emphasis added)).

___, 733 S.E.2d 881, 885 (2012) (holding that the last act of the defendant attorney was the drafting of the trust documents because that was the service the defendant had agreed to provide), *Garrett*, 120 N.C. App. at 693-96, 463 S.E.2d at 414-16 (holding that, assuming the defendant attorney had a continuing obligation under the contract to correct a negligent omission, the "last act" was the point at which the defendant attorney could no longer remedy the alleged omission), *Hargett*, 337 N.C. at 656-58, 447 S.E.2d at 788-89 (holding that "[b]ecause of the contractual arrangement between testator and defendant here, defendant's professional obligations concluded with his preparation of the will and the supervision of its execution, the latter act becoming his last act giving rise to the claim."), *and McGahren v. Saenger*, 118 N.C. App. 649, 653, 456 S.E.2d 852, 854 (holding that where the defendant attorney contracted to draft a deed the defendant attorney's last act was delivering the deed), *disc. rev. denied*, 340 N.C. 568, 460 S.E.2d 318 (1995).

Plaintiffs alleged that defendants

breached their duty to Carle and Simmons by:

a) Communicating inaccurate, incomplete and erroneous information to Carle and Simmons regarding the Optech monetization loan program.

b) Failing to adequately conduct their due diligence investigation of Derivium and its affiliate, Optech, and the individuals involved in the reinvestment transaction.

c) Failing to verify that the stocks purchased as QR[S] were, in fact, in existence when Carle and Simmons made their Section 1042 election and held in 'accounts located with a nationally or internationally recognized financial institution . . . on behalf of the borrower' as required by the Master Loan Financing and Security Agreement.

d) Failing to discover that Derivium and Optech appeared to be operating a Ponzi scheme.

e) Failing to discover that Derivium and Optech were under investigation by the California Franchise Tax Board and the Internal Revenue Service, and that both tax authorities had characterized these transactions as sales rather than loans.

f) Failing to make reasonable inquiries necessary to adequately perform a due diligence investigation of Derivium and Optech.

g) Failing to meet the standards of reasonable care required of lawyers in the same or similar localities and under similar circumstances.

Defendants deny that they ever agreed to provide a due diligence investigation of Derivium and Optech, provide any tax advice, or opine on the financial viability of the proposed transaction. They highlight that the Engagement Letter signed by plaintiffs and defendants specifically excludes tax advice, advice on how to properly assess whether the proposed purchases were qualified replacement securities, and advice on the financial feasibility of the overall transaction. Although he admits signing it, plaintiff Carle claims to have never read the agreement and testified that "what the engagement letter said and what happened in reality were two different things. We [received] plenty of tax advice from [defendants]."

Although there is a genuine issue of fact regarding the actual scope of defendant's legal services, there is no debate that the period during which defendants allegedly failed to provide proper advice or conduct a thorough investigation of the other parties to the deal was prior to the deal closing. "[A]n attorney's duty to a client is . . . determined by the nature of the services he agreed to perform." *Hargett*, 337 N.C. at 656, 447 S.E.2d at 788. Defendants were engaged to represent plaintiffs during the ESOP transaction. The Engagement Letter specified the three stages of the transaction:

> Our representation will address three main components of the total transaction. One is the sale and transfer of stock indicated earlier (the "Sale"). Another is your loan of approximately $8,000,000 to the Company simultaneously with the Sale, the Company's other borrowings as they affect your loan and issuance to you of any stock warrants incident to your loan (the "Loan"). The third component includes transactions whereby you obtain qualified replacement securities following the Sale and simultaneously obtain one or more loans secured by a pledge of those securities (the "Monitization Transactions").

In August 2005, after the deal had closed, concerns were raised regarding the transaction because Derivium was on the brink of bank-

ruptcy, which defendants then investigated at plaintiffs' request. Defendants later helped prepare for plaintiffs' 2007 IRS inquiry relating to the tax implications of this transaction. Thus, it is clear that although they considered these matter separate and billed plaintiffs for each matters separately, defendants continued to represent plaintiffs well after 10 June 2005 and to assist plaintiffs with matters arising from the transaction, even without any subsequent engagement letter.

Plaintiffs correctly point out that defendants cannot simply divide the representation into different files to separate these matters for purposes of the statute of repose. The issue, however, is not whether defendants continued to represent plaintiffs after the transaction, *Chase Development Group,* ___ N.C. App. at ___, 710 S.E.2d at 225, nor whether defendants divided their representation in a certain way for billing purposes. The issue is when the last act alleged to have caused plaintiffs harm occurred. *Garrett,* 120 N.C. App. at 693, 463 S.E.2d at 414.

All of plaintiffs' claims arise from the conduct of this transaction, not from any subsequent conduct. The last action that defendants took on this transaction was a final set of emails on 27 May and 10 June 2005 between defendant Bullard and Randolph Anderson of Derivium wherein defendant Bullard inquired about the status of the securities purchases and Mr. Anderson responded that the transaction was complete. Defendant Bullard testified that their work on the transaction stopped at that time because "there was nothing else to do." On 18 July 2005, defendants sent a letter to plaintiffs informing them that Derivium had confirmed that the transaction had been completed.

Additionally, by 10 June 2005, nothing could have been done to change the fact that the money had been transferred to Derivium/Optech or to remedy the tax implications of the transaction. *See Garrett,* 120 N.C. App. at 694-95, 463 S.E.2d at 415 (holding that any continuing duty the defendant attorney may have had was finished when the alleged mistake could no longer be remedied). According to plaintiffs' expert witness, the tax penalties for which plaintiffs seek compensation were unavoidable after 1 January 2005 because at that point it would not have been possible to "do a valid tax rescission." Further, according to the expert, after spring 2005 the money invested by plaintiffs could not be recovered because once Derivium had the money, "it was gone." Thus, after that point there would have been no opportunity to remedy any failure to fully vet

Derivium and Optech, or properly analyze the tax implications of the transaction.

Considering the evidence in the light most favorable to plaintiffs, the last act giving rise to plaintiffs' claim took place on 10 June 2005 because at that point defendants' role in the transaction was complete and nothing could have been done to remedy the alleged omissions. *See Garrett*, 120 N.C. App. at 693, 463 S.E.2d at 414. Plaintiffs commenced this action on 25 January 2010, more than four years after the last act of defendants giving rise to plaintiff's cause of action. Even if plaintiffs are correct that their action did not accrue until the IRS issued its final assessment, the action would still be barred by the statute of repose. N.C. Gen. Stat. § 1-15(c); *Hargett*, 337 N.C. at 655, 447 S.E.2d at 788. "If the action is not brought within the specified period, the plaintiff literally has no cause of action." *Goodman*, 192 N.C. App. at 474, 665 S.E.2d at 531. Therefore, defendants are entitled to judgment as a matter of law and we affirm the trial court's order granting defendants' motion for summary judgment. *See Smith*, 181 N.C. App. at 587, 640 S.E.2d at 438.

IV. Conclusion

Plaintiffs' only claim against defendants is barred by the statute of repose in N.C. Gen. Stat. § 1-15(c) because plaintiffs commenced the present action more than four years after the last act giving rise to their claim. There is no genuine issue as to facts material to the applicability of the statute of repose and defendants are entitled to judgment as a matter of law. Therefore, we affirm the trial court's order granting defendants' motion for summary judgment.

AFFIRMED.

Judges STEPHENS and DILLON concur.