IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA16-525

Filed: 20 December 2016

Buncombe County, No. 13 CVS 4413

KAREN HEAD, Plaintiff,

v.

GOULD KILLIAN CPA GROUP, P.A., G. EDWARD TOWSON, II, CPA, Defendants.

Appeal by plaintiff from order entered 31 December 2015 by Judge William H. Coward in Buncombe County Superior Court. Heard in the Court of Appeals 17 October 2016.

*Erwin, Bishop, Capitano & Moss, PA, by J. Daniel Bishop and Matthew M. Holtgrewe, for plaintiff-appellant.*

*Sharpless & Stavola, P.A., by Brenda S. McClearn, for defendants-appellees.*

TYSON, Judge.

Karen Head ("Plaintiff") appeals from the trial court's order granting Gould Killian CPA Group, P.A.'s and G. Edward Towson, II, CPA's ("Towson") (collectively "Defendants") motion for partial summary judgment and amended motion for partial summary judgment  We affirm in part, reverse in part, and remand for trial on Plaintiff's professional negligence claim.

I.  Factual Background

Plaintiff hired Defendants to prepare her tax returns for the 2005 tax year and subsequently employed them to prepare her taxes for tax years 2006, 2007, 2008 and 2009 respectively. Upon Defendants' completion of the preparation of Plaintiff's 2005 returns, Plaintiff came to Defendants' office, met with Towson, reviewed and signed her returns, tendered a check in the amount of taxes she owed, and requested that Towson mail her taxes to the Internal Revenue Service ("IRS") and several state tax agencies for her. Towson agreed to do so as a courtesy to Plaintiff, and deposited her completed returns in the mail.

For each of the ensuing four tax years, 2006 through 2009, Defendants were engaged to prepare Plaintiff's tax returns. However, these returns were not timely filed, as neither Defendants nor Plaintiff submitted them to or filed them with the IRS as required by the applicable deadlines.

On 4 November 2013, Plaintiff filed a complaint and alleged causes of action against Defendants for professional negligence and fraudulent concealment. Plaintiff also asserted a claim for punitive damages in connection with her fraudulent concealment claim. Plaintiff's complaint asserted Defendants had willfully and wantonly deceived Plaintiff by concealing from her the fact that they had failed to ensure her tax returns for tax years 2006 through 2009 were timely filed. As a result, she incurred tax penalties and interest.

Defendants filed a motion to dismiss and motion for attorneys' fees pursuant to Rules 9(b) and 12(b)(6) of the North Carolina Rules of Civil Procedure. On 14 July 2014, the trial court entered an order denying this motion.

On 23 November 2015, Defendants filed a motion for partial summary judgment, and filed an amended motion for partial summary judgment on 9 December 2015. Defendants' amended motion sought summary judgment on Plaintiff's claims for professional negligence regarding her 2006 and 2007 tax returns, as well as her fraudulent concealment and punitive damages claims. Defendants did not move for summary judgment on Plaintiff's professional malpractice claims relating to her 2008 and 2009 tax returns.

In support of their motion for partial summary judgment, Defendants submitted the following for consideration by the trial court: (1) a brief in support of their motion; (2) Plaintiff's complaint; (3) a document entitled "2006 Individual Income Tax Cover Sheet" along with an accompanying document entitled "Filing Instructions Individual Income Tax Return Taxable Year Ended December 31, 2006" provided to Plaintiff explaining the steps she needed to take in order to submit her prepared tax returns to the IRS; (4) a document entitled "2007 Individual Income Tax Cover Sheet" along with an accompanying document entitled "Filing Instructions Individual Income Tax Return Taxable Year Ended December 31, 2007" similar in all material respects to the 2006 cover sheet provided to Plaintiff for her 2007 prepared

tax returns; (5) a deposition of Plaintiff; (6) IRS documents detailing Plaintiff's penalties and interest incurred in connection with her returns; (7) excerpts from a deposition of Defendants' expert, Michael Gillis, explaining Defendants' tax preparation procedures; and (8) a tolling agreement executed in 2013. Defendants additionally submitted various cases and statutes in support of their position.

Plaintiff, in response, submitted: (1) a brief in support of her position; (2) a series of emails between Towson, Plaintiff, and her assistant; (3) various correspondence and documents from the IRS; (4) Defendants' responses to interrogatories; (5) the deposition of Edward Towson affirmatively stating that Plaintiff's prepared tax returns and accompanying instructions had been provided to her along with instructions on how to file them and the importance of doing so in a timely fashion; and (6) the log of IRS Revenue Officer Rosa Shade indicating she had never had certain discussions with Towson concerning Plaintiff's taxes despite his assertion to the contrary. Plaintiff additionally submitted various cases and statutes in support of her position.

The "2006 Individual Income Tax Cover Sheet" and accompanying "Filing Instructions Individual Income Tax Return Taxable Year Ended December 31, 2006" document submitted to the trial court stated, in pertinent part, the following:

> Sign and date the return on Page 2. Initial and date the copy, and retain it for your records.
>
> Mail the Form 1040 return by October 15, 2007 to:

> Internal Revenue Service
> Atlanta, GA 39901-0002
>
> Your required federal estimated tax payments are shown below. . . . Make each check payable to the United States Treasury, write your social security number and "2007 Form 1040-ES" on the check.
>
> . . . .
>
> Mail the Form 1040-ES payment voucher and check by the due date indicated above to
>
> Internal Revenue Service
> P.O. Box 105225
> Atlanta, GA 30348-5225

At the bottom of the cover sheet after "How Delivered:" the following was written: "By Hand to Karen." The corresponding 2007 cover sheet and instructions, in turn, also similarly state: "How Delivered: Mailed to K. Head . . . Picked up on 12/12/08."

On 31 December 2015, the trial court entered an order granting Defendants' motions. Plaintiff filed notice of appeal on 19 January 2016.

## II. Issues

Plaintiff argues the trial court erred in granting Defendants' motion for summary judgment and amended motion for partial summary judgment. She asserts genuine issues of material fact exist concerning her professional negligence and fraudulent concealment claims regarding her tax returns. We agree with Plaintiff

that a genuine issue of material fact exists as to her professional negligence claim, and disagree with Plaintiff that the trial court erred in granting Defendants' partial summary judgment motion concerning her fraudulent concealment and punitive damages claims.

### III.  Appellate Jurisdiction

Initially, we address whether this Court possesses jurisdiction over the present appeal.  It is undisputed the present appeal is interlocutory. *See Mecklenburg Cnty. v. Simply Fashion Stores, Ltd.*, 208 N.C. App. 664, 667, 704 S.E.2d 48, 51 (2010) (citations omitted) ("An order is interlocutory when it does not dispose of the entire case but instead, leaves outstanding issues for further action at the trial level."). Generally, there is no right of immediate appeal from an interlocutory order. *Goldston v. Am. Motors Corp.*, 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990).

> An interlocutory order may be appealed, however, if the order implicates a substantial right of the appellant that would be lost if the order was not reviewed prior to the issuance of a final judgment.  It is the appealing party's burden to establish that a substantial right would be jeopardized unless an immediate appeal is allowed.

*Radcliffe v. Avenel Homeowners Ass'n, Inc.*, __ N.C. App. __, __, 789 S.E.2d 893, 901 (2016) (internal citations, quotation marks, and footnote omitted).

It is well settled that a substantial right is affected "'where a possibility of inconsistent verdicts exists if the case proceeds to trial.'" *Heritage Operating, L.P. v. N.C. Propane Exch., LLC*, 219 N.C. App. 623, 627, 727 S.E.2d 311, 314 (2012) (quoting

*Country Club of Johnston Cnty., Inc. v. U.S. Fidelity & Guar. Co.*, 135 N.C. App. 159, 167, 519 S.E.2d 540, 546 (1999), *disc. review denied*, 351 N.C. 352, 542 S.E.2d 207 (2000)).

> To demonstrate that a second trial will affect a substantial right, [the appellant] must show not only that one claim has been finally determined and others remain which have not yet been determined, but that (1) the same factual issues would be present in both trials and (2) the possibility of inconsistent verdicts on those issues exists.

*Id.* at 627-28, 727 S.E.2d at 314-15 (citation, internal quotation marks, and brackets omitted).

"'[S]o long as a claim has been finally determined, delaying the appeal of that final determination will ordinarily affect a substantial right *if* there are overlapping factual issues between the claim determined and any claims which have not yet been determined.'" *Carcano v. JBSS, LLC*, 200 N.C. App. 162, 168, 684 S.E.2d 41, 47 (2009) (quoting *Davidson v. Knauff Ins. Agency*, 93 N.C. App. 20, 26, 376 S.E.2d 488, 492, *disc. review denied*, 324 N.C. 577, 381 S.E.2d 772 (1989)). "Issues are the 'same' if the facts relevant to their resolution overlap in such a way as to create a risk that separate litigation of those issues might result in inconsistent verdicts." *Hamilton v. Mortg. Info. Servs., Inc.*, 212 N.C. App. 73, 79, 711 S.E.2d 185, 190 (2011) (citing *Davidson*, 93 N.C. App. at 25, 376 S.E.2d at 491).

The present appeal presents overlapping factual issues concerning Plaintiff's business relationship with Defendants, which speak directly not only to her claims

ruled upon by the trial court, but also her remaining professional negligence claims concerning her 2008 and 2009 returns. With the potential for inconsistent verdicts based upon a common factual nexus, we hold Plaintiff's appeal of the trial court's order affects a substantial right and is properly before us.

## IV. Standard of Review

Entry of summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue exists concerning any material fact and that any party is entitled to judgment as a matter of law. N.C. Gen. Stat. § 1A-1, Rule 56(c). "When considering a motion for summary judgment, the [court] must view the presented evidence in a light most favorable to the nonmoving party." *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001) (citation omitted).

> The party moving for summary judgment ultimately has the burden of establishing the lack of any triable issue of fact.
>
> A defendant may show entitlement to summary judgment by (1) proving that an essential element of the plaintiff's case is non-existent, or (2) showing through discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot surmount an affirmative defense. Summary judgment is not appropriate where matters of credibility and determining the weight of the evidence exist.
>
> Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving

party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a prima facie case at trial.

We review an order allowing summary judgment de novo. If the granting of summary judgment can be sustained on any grounds, it should be affirmed on appeal.

*Wilkins v. Safran,* 185 N.C. App. 668, 672, 649 S.E.2d 658, 661 (2007) (internal citations and quotations omitted).

"Summary judgment is a drastic measure and it should be used with caution, especially in a negligence case in which a jury ordinarily applies the reasonable person standard to the facts of each case." *Harrison v. City of Sanford*, 177 N.C. App. 116, 121, 627 S.E.2d 672, 676 (2006) (citation omitted).

## V. Statute of Repose

Plaintiff argues the trial court erred in granting summary judgment in favor of Defendants regarding professional negligence claims relating to her 2006 and 2007 tax returns. The trial court based its determination on finding Plaintiff's professional negligence claim is barred by N.C. Gen. Stat. § 1-15(c), the applicable statute of repose.

"[I]n no event shall an action be commenced more than four years from the last act of the defendant giving rise to the cause of action[.]" N.C. Gen. Stat. § 1-15(c) (2015).

Furthermore,

> [u]nlike the statute of limitations, the statute of repose serves as an unyielding and absolute barrier that prevents a plaintiff's right of action even before his cause of action may accrue, which is generally recognized as the point in time when the elements necessary for a legal wrong coalesce.
>
> In order to decide whether the statute of repose bars plaintiffs' claim we must determine when the last act of alleged negligence took place. To determine when the last act or omission occurred we look to factors such as the contractual relationship between the parties, when the contracted-for services were complete, and when the alleged mistakes could no longer be remedied.

*Carle v. Wyrick, Robbins, Yates & Ponton, LLP*, 225 N.C. App. 656, 661, 738 S.E.2d 766, 770-71 (2013) (internal citations, quotation marks, and footnote omitted).

In arguing Plaintiff's professional negligence claim is barred by the statute of repose, Defendants assert, as undisputed fact, the final act taken by Defendants in regards to Plaintiff's 2006 and 2007 tax returns occurred on 12 December 2008, when Defendants purportedly hand delivered Plaintiff her prepared 2007 returns. We disagree.

Defendants characterize the evidence, regarding if and when Plaintiff received her tax returns from Defendants, as unrebutted fact. However, when viewed in the light most favorable to Plaintiff, as the non-moving party, the 2006 and 2007 Income Tax Cover Sheets and internal tracking presented by Defendants as evidence that Defendants provided and delivered to Plaintiff her tax returns on the dates signified in those documents is challenged and rebutted by Plaintiff's deposition testimony.

Reading Plaintiff's testimony from her deposition in the light most favorable to her as the non-moving party, she was unsure about even being present in Defendants' office in 2007 and 2008, when the returns were purportedly hand delivered, but she emphatically denies receiving either prepared returns or written instructions. This evidence directly contradicts Defendants' testimonial and documentary evidence purporting Defendants hand delivered and Plaintiff received in Defendants' office her 2006 returns on 8 October 2007 and 2007 returns on 12 December 2008.

Viewing the Defendants' evidence as conclusive fact Defendant delivered and Plaintiff physically received her returns is error and does not view all the record evidence, and every reasonable inference therefrom, in the light most favorable to Plaintiff as the non-moving party. *Dalton*, 353 N.C. at 651, 548 S.E.2d at 707.

Genuine issues of material fact exist of whether Defendants were responsible for filing, mailing, or providing Plaintiff with her completed returns, and whether, if and when, Defendants did, in fact, provide Plaintiff with her returns. Defendants contend that the *preparation* of the returns were the Defendants' last acts pertaining to Plaintiff's 2006 and 2007 returns to accrue the statute of repose. However, Defendants' assertions are rebutted by the testimony of an expert witness, Michael Gillis, on the standard of care, which shows the delivery of the completed returns to

the client, not completion of preparation, marks the conclusion of a tax preparation engagement:

> Q. So by your testimony, then, for each year, the engagement of Gould Killian ended when they delivered a prepared return to Karen Head?
>
> A. Delivered, mailed, she picked up, whatever process it was in which she *received* her returns, then it's her responsibility to sign and file at that point. (emphasis supplied).

Generally, the start of the running of the statute of repose for professional negligence occurs when a prospective defendant has completed the transaction he was hired to complete, which concludes his professional obligation to his client. *See Carle*, 225 N.C. App. at 665, 738 S.E. 2d at 772-73 (holding that defendants' obligation to plaintiffs was complete and statute of repose began to run when defendants structured the completed transaction of stock into employee stock ownership plan); *Hargett v. Holland*, 337 N.C. 651, 654, 447 S.E.2d 784, 787 (1994) (holding that last act of defendants triggering the running of the statute of repose was the preparation, delivery and supervised *execution* of a will); *Babb v. Hoskins*, 223 N.C. App. 103, 108, 733 S.E.2d 881, 885 (2012) (holding that the last act of defendants triggering the running of the statute of repose was the preparation, delivery, and execution of trust documents).

In this case, Plaintiff alleges a disputed issue of fact exists of whether the tax returns were to be delivered to her or filed by Defendants. *See Wilkins*, 185 N.C. App.

at 672, 649 S.E.2d at 661. The facts are in dispute whether Defendants were responsible for delivering or filing Plaintiff's tax returns and whether they did, in fact, deliver or file Plaintiff's completed tax returns. The resolution of this disputed fact is the basis to determine when the last act by Defendants occurred to trigger and commence the running of the statute of repose.

If the parties' understanding was that Defendants were responsible for delivering, filing, or mailing Plaintiff's 2006 and 2007 returns, and Defendants failed to do so as alleged by Plaintiff, then the last act of Defendants for statute of repose purposes would be their failure to provide Plaintiff with her returns at the times immediately prior to the deadlines for which refunds could be claimed by Plaintiff on those returns. Those points in time would be when "the alleged mistakes could no longer be remedied." *Carle*, 225 N.C. App. at 661, 738 S.E. 2d at 771. The statute of repose would not have commenced to run until those points in time for each return had passed. *See id.*

Genuine issues of material fact exist of whether Defendants were responsible for delivering, mailing, or providing Plaintiff with her tax returns, and whether and when they did so. These are classic issues of fact reserved for the jury to resolve. The trial court's conclusions that the statute of repose applies as a matter of law to affirm summary judgment under these facts is error, when the dates and facts constituting Defendants' last acts or omissions are in dispute.

## VI.  Professional Negligence

Due to the trial court's determination that Plaintiff's professional negligence claim is barred by the applicable statute of repose, it declined to address whether Plaintiff has sufficiently alleged and pled the elements of professional negligence to defeat Defendants' motion for summary judgment.  Our *de novo* review shows Plaintiff has alleged and shown genuine issues of fact exist, which overcomes Defendants' motion for summary judgment on Plaintiff's professional negligence claim.

"In order to establish a claim of professional negligence, a plaintiff must show: '(1) the nature of the defendant's profession; (2) the defendant's duty to conform to a certain standard of conduct; and (3) a breach of the duty proximately caused injury to the plaintiffs.'" *Michael v. Huffman Oil Co.*, 190 N.C. App. 256, 271, 661 S.E.2d 1, 11 (2008) (emphasis omitted) (quoting *Associated Indus. Contr'rs, Inc. v. Fleming Eng'g, Inc.*, 162 N.C. App. 405, 413, 590 S.E.2d 866, 872 (2004)).

"It is generally recognized that an accountant may be held liable for damages naturally and proximately resulting from his failure to use that degree of knowledge, skill and judgment usually possessed by members of the profession in a particular locality." *Snipes v. Jackson,* 69 N.C. App. 64, 73, 316 S.E.2d 657, 662, *disc. rev. denied,* 312 N.C. 85, 321 S.E.2d 899 (1984) (citation omitted).

Viewed in the light most favorable to Plaintiff, as the non-moving party, the evidence tends to show genuine issues of material fact exist regarding Defendants' alleged professional negligence which precludes summary judgment. *Wilkins*, 185 N.C. App. at 672, 649 S.E.2d at 661. Defendant, Edward Towson, agrees in his testimony that he and his co-Defendant firm owe a duty of care to Plaintiff.

The fact is undisputed that Defendants did timely submit, mail, and file Plaintiff's 2005 tax returns at her request. Even though the record shows Plaintiff did not ask Defendants to mail her 2006 and 2007 tax returns, a genuine issue of fact is raised by Plaintiff's testimony about her understanding regarding whether Defendants would file or mail her tax returns for 2006 and 2007 based on their prior willingness to mail her returns in 2005.

Whether Defendants should have made it clearer, and did make it clear to Plaintiff that they allegedly did not intend to file or mail her tax returns in those years is a factual dispute. Having filed her returns the previous year, it would be reasonable for Plaintiff to presume and expect Defendants would do the same in succeeding years, particularly where federal and multiple state returns were required to be prepared, signed, and filed.

Taking Plaintiff's allegations and testimony as true, together with the undisputed fact that Plaintiff's 2005 tax returns were timely filed and her 2006 and 2007 returns were not filed when due, a genuine issue of material fact exists for the

jury to determine whether Defendants breached their duty of care by not timely filing or by physically providing Plaintiff with her completed tax returns.

On the matter of injury incurred, the record shows Plaintiff's 2006 and 2007 returns were not filed within three years of their original due date, which cost her the ability to claim a refund or tax credit for overpayment. I.R.C. § 6511(b)(2)(A) (2010). Plaintiff's 2006 return reflected an overpayment of $60,019 to be applied to the 2007 return. Based upon I.R.C. § 6511(b)(2)(A), Plaintiff could have claimed the overpayment credit, if the 2006 return had been timely filed by October 15, 2007.

Viewing the evidence in the light most favorable to Plaintiff, a reasonable fact-finder could determine Defendants negligently failed to file, deliver, or provide Plaintiff with her completed tax returns for her to timely file, and their failure resulted in Plaintiff's inability to claim a tax refund or credit.

## VII. Fraudulent Concealment

Plaintiff next contends the trial court erred by granting summary judgment in Defendants' favor as to her claim for fraudulent concealment. We disagree.

> Fraudulent concealment is generally asserted as a claim for damages. It is a form of fraudulent misrepresentation entitling the claimant to damages or rescission of [a] contract. To assert a claim for fraudulent concealment, there must be a showing that the opposing party knew a material fact, and failed to fully disclose that fact in violation of a pre-existing duty to disclose.

*Friedland v. Gales*, 131 N.C. App. 802, 807, 509 S.E.2d 793, 797 (1998) (internal

citations and quotation marks omitted).

Plaintiff cites to portions of her deposition testimony, as well as a series of

emails including emails between her, Towson, and her assistant, and the log of Rosa

Shade, beginning on or around 28 March 2012. She asserts this evidence supports

her position that a genuine issue of material fact exists concerning her fraudulent

concealment claim. Significantly, however, these emails were exchanged *after*

Plaintiff had already terminated her employment of Defendants on 27 September

2011.

> A cause of action for fraud is based on an affirmative
> misrepresentation of a material fact, or a failure to disclose
> a material fact relating to a transaction which the parties
> had a duty to disclose. . . .
>
> A duty to disclose arises in three situations. The first
> instance is where a fiduciary relationship exists between
> the parties to the transaction. . . .
>
>     . . . .
>
> The two remaining situations in which a duty to disclose
> exists arise outside a fiduciary relationship, when the
> parties are negotiating at arm's length. The first of these is
> when a party has taken affirmative steps to conceal
> material facts from the other. . . .
>
> A duty to disclose in arm's length negotiations also arises
> where one party has knowledge of a latent defect in the
> subject matter of the negotiations about which the other
> party is both ignorant and unable to discover through
> reasonable diligence.

*Harton v. Harton*, 81 N.C. App. 295, 297-98, 344 S.E.2d 117, 119 (1986) (internal citations omitted).

"We have found no case stating that the relationship between accountant and client is *per se* fiduciary in nature." *Harrold v. Dowd*, 149 N.C. App. 777, 784, 561 S.E.2d 914, 919 (2002); *see also CommScope Credit Union v. Butler & Burke, LLP*, __ N.C. __, __, 790 S.E.2d 657, 660-61 (2016) (holding that there is no *per se* fiduciary relationship between an independent auditor and its audit client). "For a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties." *Dalton v. Camp*, 353 N.C. at 651, 548 S.E.2d at 707 (citations omitted).

Consequently, Defendants owed no *per se* fiduciary duty to Plaintiff at the time the emails were sent because Defendants had already been terminated by Plaintiff and replaced by another accountant. Furthermore, Defendants and Plaintiff were in no way "negotiating at arm's length" about "the subject matter of [a] negotiation" at the time the emails were sent. *Harton*, 81 N.C. App. at 298, 344 S.E.2d at 119.

No relationship, fiduciary or otherwise, existed between the parties at that point in time, as Plaintiff had already terminated her relationship with Defendants, hired a new CPA, and was not attempting to hire or pay Defendants for any new work engagement.

We hold that Plaintiff has failed to proffer evidence demonstrating that a pre-existing duty to disclose existed. She has failed to advance all of the elements of a

fraudulent concealment claim and to rebut Defendants' evidence in support of their motions for summary judgment and partial summary judgment. Plaintiff's arguments on this issue are overruled.

Because the trial court properly granted summary judgment in Defendants' favor on Plaintiff's fraudulent concealment claim, we also affirm its grant of summary judgment in Defendants' favor on Plaintiff's claim for punitive damages. *See Watson v. Dixon*, 352 N.C. 343, 348, 532 S.E.2d 175, 178 (2000) (citations omitted) ("As a rule you cannot have a cause of action for punitive damages by itself. If the complainant fails to plead or prove his cause of action, then he is not allowed an award of punitive damages because he must establish his cause of action as a prerequisite for a punitive damage award.").

## VIII.  Conclusion

The trial court's order granting partial summary judgment to Defendants on Plaintiff's fraudulent concealment claim and punitive damages claim is affirmed. The trial court's order granting Defendant partial summary judgment on the Plaintiff's professional negligence claim is reversed. We remand for trial on Plaintiff's professional negligence claim. *It is so ordered.*

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.

Chief Judge McGEE concurs.

Judge ENOCHS concurs in part and dissents in a separate opinion.

ENOCHS, Judge, concurring in part and dissenting in part.

Although I agree with my colleagues that the trial court properly granted Defendants' motion for partial summary judgment on Plaintiff's fraudulent concealment claim, I respectfully dissent from the majority's position that the trial court erroneously granted partial summary judgment on Plaintiff's professional negligence claims concerning her 2006 and 2007 tax returns. Because I believe that Plaintiff's professional negligence claims were properly barred by the applicable statute of repose, I would affirm the trial court's grant of partial summary judgement on these claims as well.

Plaintiff contends that the trial court erred in granting summary judgement in favor of Defendants as to her professional negligence claims relating to her 2006 and 2007 tax returns. "In order to establish a claim of professional negligence, a plaintiff must show: '(1) the nature of the defendant's profession; (2) the defendant's duty to conform to a certain standard of conduct; and (3) a breach of the duty proximately caused injury to the plaintiffs.'" *Michael v. Huffman Oil Co.*, 190 N.C. App. 256, 271, 661 S.E.2d 1, 11 (2008) (emphasis omitted) (quoting *Associated Indus. Contr'rs, Inc. v. Fleming Eng'g, Inc.*, 162 N.C. App. 405, 413, 590 S.E.2d 866, 872 (2004)).

However, in the present case, the issue of whether Plaintiff successfully established the elements of a professional negligence claim need not be reached as her professional negligence claims relating to her 2006 and 2007 tax returns are

barred by the applicable statute of repose. N.C. Gen. Stat. § 1-15(c) (2015) states, in pertinent part, that "in no event shall an action be commenced more than four years from the last act of the defendant giving rise to the cause of action[.]"

It is well established that

> statutes of repose are intended to mitigate the risk of inherently uncertain and potentially limitless legal exposure. Accordingly, such a statute's limitation period is initiated by the defendant's last act *or omission* that at some later point gives rise to the plaintiff's cause of action. *The time of the occurrence or discovery of the plaintiff's injury is not a factor in the operation of a statute of repose.*

*Christie v. Hartley Constr., Inc.*, 367 N.C. 534, 539, 766 S.E.2d 283, 287 (2014) (internal citations and quotation marks omitted) (emphasis added).

Moreover,

> [u]nlike the statute of limitations, the statute of repose serves as an unyielding and absolute barrier that prevents a plaintiff's right of action even before his cause of action may accrue, which is generally recognized as the point in time when the elements necessary for a legal wrong coalesce.
>
> In order to decide whether the statute of repose bars plaintiffs' claim we must determine when the last act of alleged negligence took place. To determine when the last act or omission occurred we look to factors such as the contractual relationship between the parties, when the contracted-for services were complete, and when the alleged mistakes could no longer be remedied.

*Carle v. Wyrick, Robbins, Yates & Ponton, LLP*, 225 N.C. App. 656, 661, 738 S.E.2d 766, 770-71 (2013) (internal citations, quotation marks, and footnote omitted).

Here, the unrebutted evidence reveals that the final act taken by Defendants in regard to Plaintiff's 2006 and 2007 tax returns occurred on 12 December 2008, when Defendants hand delivered Plaintiff her 2007 prepared returns. Plaintiff filed her complaint asserting professional negligence relating to the preparation of her 2006 and 2007 tax returns on 4 November 2013 — nearly 11 months after the limitations period imposed by N.C. Gen. Stat. § 1-15(c) had expired as to the 2007 returns, and well after the limitations period relating to her 2006 returns had run.

It is important to note that Defendants' preparation of Plaintiff's returns for each tax year were separate and distinct transactions for the purposes of the statute of repose. Indeed, this is evidenced by Michael Gillis' unrebutted deposition testimony:

> Q. So by your testimony, then, for each year, the engagement of Gould Killian ended when they delivered a prepared return to Karen Head?
>
> A. Delivered, mailed, she picked up, whatever process it was in which she received her returns, then it's her responsibility to sign and file at that point.

Moreover, the treatment of Plaintiff's professional negligence claims by the parties and the trial court below indicate that each prepared return was considered to be a separate and distinct transaction. This is made even more apparent by the fact that Plaintiff's professional negligence claims for tax years 2008 and 2009 — which were brought within the four-year window for statute of repose purposes — were allowed

3

by the trial court to advance to trial. Consequently, preparation of each of the tax returns for tax years 2006, 2007, 2008, and 2009 constitute four separate completed transactions for which the four-year statute of repose began to run at the time they were delivered — or were erroneously not delivered due to an omission by Defendants — to Plaintiff.

Plaintiff nevertheless contends on appeal, however, that Defendants' final act was not the delivery of the 2006 and 2007 tax returns to her — or Defendants' omission in delivering them to her — but rather was the failure on the part of Defendants to later cure any failure to file the returns by subsequently alerting Plaintiff that she needed to file them before the assessment of interest and penalties by the IRS. Significantly though, "[t]he issue, however, is not whether defendants continued to represent plaintiffs after the transaction . . . . The issue is when the last act alleged to have caused plaintiffs harm occurred." *Carle*, 225 N.C. App. at 664, 738 S.E.2d at 772.

This Court addressed a similar situation in *Carle*, where we analyzed what constituted a completed transaction triggering the start of the running of the statute of repose. In that case, the plaintiffs brought a professional negligence action against the law firm and attorney who created an employee stock ownership trust for them in 2004. *Id.* at 656-57, 738 S.E.2d at 768. The transaction was supposed to be structured so that the plaintiffs would be able to monetize their corporate stock while

avoiding the capital gains taxes normally associated with doing so. *Id.* at 657, 738 S.E.2d at 768. However, the defendants improperly structured the trust and the plaintiffs were later assessed with tax deficiencies by the IRS on the basis that the plaintiffs did, in fact, owe capital gains taxes. *Id.* at 657-58, 738 S.E.2d at 768.

Significantly, as in the present case, the defendants in *Carle* continued to work with the plaintiffs towards resolving issues with the transaction *after* its completion:

> In August 2005, after the deal had closed, concerns were raised regarding the transaction . . . which defendants then investigated at plaintiffs' request. Defendants later helped prepare for plaintiffs' 2007 IRS inquiry relating to the tax implications of this transaction. Thus, it is clear that although they considered these matter[s] separate and billed plaintiffs for each matter[] separately, defendants continued to represent plaintiffs well after 10 June 2005 and to assist plaintiffs with matters arising from the transaction, even without any subsequent engagement letter.

*Id.* at 663-64, 738 S.E.2d at 772.

The plaintiffs filed suit for, among other claims, professional negligence on 25 January 2010. *Id.* at 658, 738 S.E.2d at 769. The defendants moved for summary judgment asserting the statute of repose. *Id.* The trial court granted the defendants' motion and the plaintiffs appealed arguing that the statute of repose did not apply as "their cause of action did not accrue until the IRS proceedings were completed on or about 26 May 2010." *Id.* at 659, 738 S.E.2d at 769.

On appeal, this Court affirmed the trial court's grant of summary judgment, holding that

> [c]onsidering the evidence in the light most favorable to plaintiffs, the last act giving rise to plaintiffs' claim took place on 10 June 2005 because at that point defendants' role in the transaction was complete and nothing could have been done to remedy the alleged omissions. Plaintiffs commenced this action on 25 January 2010, more than four years after the last act of defendants giving rise to plaintiff's cause of action. Even if plaintiffs are correct that their action did not accrue until the IRS issued its final assessment, the action would still be barred by the statute of repose. If the action is not brought within the specified period, the plaintiff literally has no cause of action. Therefore, defendants are entitled to judgment as a matter of law and we affirm the trial court's order granting defendants' motion for summary judgment.

*Id.* at 665, 738 S.E.2d at 772-73 (internal citations and quotation marks omitted); *see also Hargett v. Holland*, 337 N.C. 651, 656, 447 S.E.2d 784, 788 (1994) (holding plaintiffs' professional negligence claim barred by statute of repose where plaintiffs' claim brought more than four years after defendant drafted will and "plaintiffs' complaint allege[d] a contractual relationship between defendant and testator to draft a will and that defendant supervise[] execution of the will. After defendant completed these acts, he had performed his professional obligations; and his professional duty to testator was at an end"); *Babb v. Hoskins*, 223 N.C. App. 103, 108, 733 S.E.2d 881, 885 (2012) ("Because the 'nature of the services he agreed to perform' was solely limited to the drafting of three [trust] documents, we conclude

that [the defendant-attorney's] professional duty to [the plaintiffs] ended upon completion of the Trust restatement on 9 October 2006, and, consistent with the above authority, [the defendant-attorney] owed no continuing fiduciary duty beyond that date[.] . . . Therefore, plaintiffs' claim for breach of fiduciary duty by [the defendant-attorney] for actions before 31 May 2007 was properly dismissed pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6) because those actions are beyond the four year statute of repose provision contained in N.C.G.S. § 1-15(c)." (internal citation omitted)).

Therefore, whether Defendants delivered Plaintiff her 2006 and 2007 tax returns to file — as their evidence tends to show — or whether Defendants *never* delivered Plaintiff's 2006 and 2007 tax returns to her after their preparation through an omission on their part — as Plaintiff claims — the statute of repose would have begun to run in either scenario on 12 December 2008 as to her 2007 returns and well before that for her 2006 returns at the time these individual transactions were deemed completed. It is immaterial that Towson later purported to help Plaintiff to resolve issues surrounding her 2006 and 2007 tax returns in light of *Carle*, as those transactions, based on the unrebutted evidence, were already deemed to be completed.

Furthermore, even assuming *arguendo* as Plaintiff's evidence tends to show that Defendants had affirmatively agreed and represented to Plaintiff that they

7

would *file* her 2006 and 2007 tax returns for her on her behalf and had failed to do so, this would, at the most, amount to an omission by Defendants occurring — at the latest — on 12 December 2008 given that a statute of repose's "limitation period is initiated by the defendant's last act *or omission* that at some later point gives rise to the plaintiff's cause of action." *Christie*, 367 N.C. at 539, 766 S.E.2d at 287 (internal quotation marks omitted) (emphasis added). Therefore, Plaintiff's claims would be barred on statute of repose grounds on this basis as well even when taking her evidence as true.

In sum, either Defendants (1) properly delivered Plaintiff's 2006 and 2007 tax returns to her; or (2) omitted to do so despite their obligation to do so. Either way the "statute's limitation period is initiated by the defendant's last act *or omission* that *at some later point* gives rise to the plaintiff's cause of action. *The time of the occurrence or discovery of the plaintiff's injury is not a factor in the operation of a statute of repose*" *Id.* (internal citations and quotation marks omitted) (emphasis added), and "[u]nlike the statute of limitations, the statute of repose serves as an unyielding and absolute barrier that prevents a plaintiff's right of action *even before his cause of action may accrue*[.]" *Carle*, 225 N.C. App. at 661, 738 S.E.2d at 770 (citation and quotation marks omitted) (emphasis added).

As a result, for all of the above reasons, I would affirm the trial court's grant of partial summary judgment on Plaintiff's professional negligence claims concerning

her 2006 and 2007 tax returns based upon the applicable statute of repose. I therefore respectfully dissent from the majority's opinion on this issue.