IN THE SUPREME COURT OF NORTH CAROLINA

No. 27A17

Filed 11 May 2018

KAREN HEAD

v.

GOULD KILLIAN CPA GROUP, P.A. and G. EDWARD TOWSON, II, CPA

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, ___ N.C. App. ___, 795 S.E.2d 142 (2016), affirming in part and reversing in part and remanding an order granting partial summary judgment entered on 31 December 2015 by Judge William H. Coward in Superior Court, Buncombe County. On 16 March 2017, the Supreme Court allowed plaintiff's petition for discretionary review of additional issues. Heard in the Supreme Court on 5 February 2018.

*Erwin, Bishop, Capitano & Moss, PA, by J. Daniel Bishop, for plaintiff-appellant/appellee.*

*Sharpless & Stavola, P.A., by Brenda S. McClearn, for defendant-appellants/appellees.*

NEWBY, Justice.

In this case we address a claim for fraudulent concealment and the application of the statute of repose to a claim of professional negligence in the context of summary judgment. Summary judgment is proper if no genuine issue of material fact exists when viewed in the light most favorable to the nonmoving party. The record here, when viewed in that light, presents genuine issues of material fact regarding

plaintiff's fraudulent concealment claim and the scope and timing of defendants' duties to plaintiff, thus making summary judgment improper in both instances. Accordingly, we affirm in part and reverse in part the decision of the Court of Appeals.

This case is currently in the summary judgment stage; thus, we review the facts in the light most favorable to plaintiff, the nonmoving party. Plaintiff Karen Head must annually file her federal tax return as well as several returns for different states. Plaintiff first hired G. Edward Towson, II, CPA (Towson) and his firm Gould Killian CPA Group, P.A. (collectively, defendants)[1] to prepare her 2005 tax returns. Defendants prepared and timely filed plaintiff's 2005 tax returns after plaintiff had provided the necessary information and signatures. Plaintiff subsequently engaged defendants for tax years 2006 through 2010. Plaintiff's federal and state tax returns for 2006, 2007, 2008, and 2009 were not filed with the various taxing authorities until 2012, however, giving rise to the present case.

On 11 and 12 August 2011, plaintiff received two notices from the Internal Revenue Service (IRS) stating that she had not filed her 2006 and 2007 tax returns. Plaintiff forwarded the notices to Towson, who responded, "I need to roll up my sleeves and sort out this mess." Towson later stated that he believed the IRS had

---

[1] The record reflects that Towson, as a principal at Gould Killian, was the primary actor in the pertinent events.

made an error because he had provided the completed returns and filing instructions to plaintiff.

On 27 September 2011, plaintiff informed Towson that she was "leaving [Towson's] accounting firm. Shortly you will be receiving information from Wayne Roddy [plaintiff's newly hired CPA] to begin the transfer of information." Nevertheless, Towson responded by expressing his intent to keep working on plaintiff's behalf: "We are almost finished with the 2010 income tax returns . . . . I will/should have them ready early next week and will call to coordinate the signing. After that, I will be happy to provide whatever is needed for Wayne Roddy." During his deposition, Towson stated that he understood this exchange to mean that plaintiff terminated him, but he continued to take action for the next twelve months in connection with plaintiff's tax matters because "[w]e were trying merely to assist with resolving the question . . . . [W]e were not her engaged CPA firm at that point." Towson did not have the 2010 returns ready as promised but did file electronically the federal return on 21 November 2011.

In response to repeated requests to transfer the information to Roddy in October and November 2011, Towson responded that they were working on "amendments" to the 2008 and 2009 tax returns, which they would complete before transferring since "it would be more difficult for [Roddy] to step into these." Later plaintiff received additional notices from the IRS for failing to file her 2006 and 2007 tax returns. Towson informed plaintiff that they would respond to and "rebut" these

tax assessments and would "keep [plaintiff] up to date on the progress." Towson stated during his deposition, however, that he knew he could not speak directly with an IRS agent on plaintiff's behalf because he did not have a power of attorney from plaintiff at that point, which the IRS required.

Following more IRS notices in March 2012, Roddy directly contacted Towson, specifically noting that "[t]hese notices seem to be saying that a return was never filed for these years. . . . [W]ould it be possible to get a copy of the tax returns that were filed for these years?" In response, Towson did not acknowledge that the returns had not been filed. Instead, Towson stated that he would work with the IRS's Taxpayer Advocate Service to "personally see to it that they get the account straightened out." Additionally, Towson affirmed that they would provide copies of the 2006 and 2007 tax returns to Roddy; defendants did not provide these copies.

Throughout April 2012, Towson represented to plaintiff that he was communicating with the Taxpayer Advocate Service and working on a resolution. Towson nevertheless stated during his deposition that defendants did not have direct communication at any point with anyone at the Taxpayer Advocate Service, and that organization likewise has no record of communications with Towson.

In July 2012, the IRS sent plaintiff a final notice of intent to levy. Towson requested that plaintiff provide a power of attorney to allow him to communicate with the IRS on her behalf, and plaintiff obliged. During August 2012, Towson used this

power of attorney to communicate with the assigned revenue officer at the IRS, but Towson consistently misrepresented these communications to plaintiff. Pertinently, Towson asserted that the revenue officer had "put a hold on collection efforts" and would "help to get the account corrected" once Towson provided additional information; however, the IRS records show that the revenue officer instead communicated the IRS would seek a lien on plaintiff if the returns were not filed by 17 August 2012. On 17 August 2012, Towson requested an extension, which the IRS granted, to "re-prepare" the returns. Towson did not notify plaintiff of this extension but instead implied that the IRS needed more time to complete the necessary corrections.

On 4 September 2012, the IRS filed a lien against plaintiff. On 27 September 2012, plaintiff contacted Towson declaring her intention to "retain[ ] [legal] counsel to help resolve this matter." The same day, Towson responded: "I actually [met] with [the IRS revenue officer] today and I think the administrative remedies will resolve this." Furthermore, Towson asked that plaintiff sign 2006 and 2007 tax return signature pages, without the whole returns, "to facilitate the proper processing." Plaintiff provided the signatures on 27 September 2012. Towson replied that the revenue officer would now have everything she needed to "correct the account by re-imputing [sic] the tax return data." Again, Towson did not mention that he had not yet filed the returns nor that he intended to file the returns. Towson filed the 2006

and 2007 tax returns with the IRS on 28 September 2012. Towson later filed the 2008 and 2009 tax returns on 18 October 2012.

On 4 November 2013, plaintiff filed her complaint asserting claims against defendants for professional negligence and fraudulent concealment, and seeking compensatory and punitive damages. Plaintiff alleged defendants failed to properly prepare and file her delinquent tax returns for tax years 2006 through 2009 and intentionally deceived her about the status of the returns. On 2 May 2014, defendants unsuccessfully moved to dismiss all claims under Rules 9(b) and 12(b)(6) of the North Carolina Rules of Civil Procedure.

On 7 December 2015, defendants filed an amended motion for partial summary judgment, contending that plaintiff could not satisfy the elements of fraudulent concealment regarding the 2006 to 2009 tax returns and that the statute of repose bars the professional negligence claim for the 2006 and 2007 tax returns.[2] Regarding the fraud claim, defendants argued that plaintiff did not reasonably rely on the alleged concealment because plaintiff could have "learned the true facts by exercise of reasonable diligence," such as reading the filing instructions provided by defendants, asking if defendants had filed the returns, contacting the IRS directly, or hiring another CPA. As for the professional negligence claim, defendants argued that the four-year statute of repose began to run upon defendants' last act, which occurred

---

[2] Defendants did not move for summary judgment on plaintiff's professional negligence claim relating to her 2008 and 2009 tax returns.

six years before plaintiff filed the complaint, when defendants allegedly provided plaintiff with the filing instructions and copies of the prepared returns.

In opposition, plaintiff argued that several genuine issues of material fact existed, including the scope of the relationship, the delivery and receipt of the filing instructions and prepared returns, and whether plaintiff reasonably relied on Towson's representations. Regarding the statute of repose, plaintiff argued that the operative date for the 2006 return was 15 October 2010, the last day plaintiff could have filed the tax returns and still receive a refund. Plaintiff submitted that Towson continued to represent her in communicating with the IRS about the 2006 and 2007 tax returns and did not actually file the returns until September 2012. Because the timing and nature of the duties of the relationship remained at issue, plaintiff argued her claims related to the years 2006 and 2007 cannot be time-barred. Likewise, plaintiff claimed to present sufficient evidence of fraudulent concealment arising out of an ongoing professional relationship to create genuine issues of material fact.

On 31 December 2015, the trial court allowed defendants' motion for partial summary judgment regarding the fraudulent concealment claim for tax years 2006 through 2009, the corresponding claim for punitive damages, and defendants' statute of repose defense for professional negligence for tax years 2006 and 2007. Plaintiff appealed.

A divided panel of the Court of Appeals affirmed in part and reversed in part the trial court's order on partial summary judgment. *Head v. Gould Killian CPA Grp.*, ___ N.C. App. ___, ___, 795 S.E.2d 142, 150-51 (2016). First, the majority reversed the trial court's decision regarding the statute of repose, concluding that "whether Defendants were responsible for delivering, mailing, or providing Plaintiff with her tax returns, and whether and when they did so" determined when the statute of repose began to run, and thus constituted genuine issues of material fact. *Id.* at ___, 795 S.E.2d at 148. Next, the court affirmed the trial court's dismissal of plaintiff's claim for fraudulent concealment because plaintiff failed to show defendants had an ongoing relationship with her and that defendants had a corresponding duty to honestly disclose information. *Id.* at ___, 795 S.E.2d at 150.

The court based its finding that defendant owed no duty to plaintiff on its view that the misrepresentations occurred "*after* Plaintiff had already terminated her employment of Defendants on 27 September 2011." *Id.* at ___, 795 S.E.2d at 150. The court explained:

> Defendants owed no *per se* fiduciary duty to Plaintiff at the time the emails were sent because Defendants had already been terminated by Plaintiff and replaced by another accountant. Furthermore, Defendants and Plaintiff were in no way "negotiating at arm's length" about "the subject matter of [a] negotiation[ ]" at the time the emails were sent.
>
> No relationship, fiduciary or otherwise, existed between the parties at that point in time, as Plaintiff had already terminated her relationship with Defendants,

> hired a new CPA, and was not attempting to hire or pay
> Defendants for any new work engagement.

*Id.* at ___, 795 S.E.2d at 150 (first brackets in original) (quoting *Harton v. Harton*, 81 N.C. App. 295, 298, 344 S.E.2d 117, 119, *disc. rev. denied*, 317 N.C. 703, 347 S.E.2d 41 (1986). Affirming the trial court's grant of summary judgment on plaintiff's fraudulent concealment claim, the court likewise affirmed the grant of summary judgment on plaintiff's related claim for punitive damages. *Id.* at ___, 795 S.E.2d at 150.

The dissent rejected the majority's statute of repose analysis, instead concluding that the last act or omission regarding the "2006 and 2007 tax returns occurred on 12 December 2008, when Defendants hand delivered Plaintiff her 2007 prepared returns." *Id.* at ___, 795 S.E.2d at 151 (Enochs, J., concurring in part and dissenting in part). Thus, the four-year statute of repose barred plaintiff's claims related to these returns. *Id.* at ___, 795 S.E.2d at 152-54. Defendants filed notice of appeal based on the dissenting opinion, and plaintiff sought discretionary review as to her fraudulent concealment claim, which we allowed.

## I.

Summary judgment is proper if "there is no genuine issue as to any material fact and . . . any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (2017). "The movant is entitled to summary judgment . . . when only a question of law arises based on undisputed facts." *Ussery v. Branch Banking & Tr.*,

368 N.C. 325, 334, 777 S.E.2d 272, 278 (2015) (citation omitted). "All facts asserted by the [nonmoving] party are taken as true and . . . viewed in the light most favorable to that party." *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000) (citations omitted). "This Court reviews appeals from summary judgment de novo." *Ussery*, 368 N.C. at 334-35, 777 S.E.2d at 278 (citation omitted). "A genuine issue of material fact 'is one that can be maintained by substantial evidence.' " *Id.* at 335, 777 S.E.2d at 278 (quoting *Dobson*, 352 N.C. at 83, 530 S.E.2d at 835). " 'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' and means 'more than a scintilla or a permissible inference.' " *Id.* at 335, 777 S.E.2d at 278-79 (quoting *Thompson v. Wake Cty. Bd. of Educ.*, 292 N.C. 406, 414, 233 S.E.2d 538, 544 (1977)).

Plaintiff and defendants disagree about which party should have filed the 2006 and 2007 tax returns. Defendants produced documents allegedly demonstrating that they provided plaintiff the completed 2006 and 2007 returns as well as personalized instructions on how to file those returns. The documents contain handwritten notes by defendants indicating that defendants hand-delivered the forms to plaintiff. Defendants maintain that they only file their clients' returns when specifically requested to do so, as plaintiff did for the 2005 tax returns. Plaintiff, on the other hand, stated in her deposition that she never received the completed returns or instructions from defendants. Because defendants had filed her 2005 tax return and plaintiff trusted that, as paid professionals, defendants would inform her when she

needed to act, plaintiff believed defendants were likewise filing her tax returns for 2006 through 2009.

Furthermore, Towson's ongoing work for, and communication with, plaintiff throughout the disputed period of representation until the tax returns were actually filed raise genuine issues of material fact regarding the nature of the relationship between plaintiff and Towson and the corresponding duty. Thus, the claim for fraudulent concealment survives summary judgment. The parties dispute the scope of defendants' contracted-for services and what constitutes defendants' last act that triggered the running of the statute of repose. Thus, summary judgment on the application of the statute of repose under the circumstances presented here is improper as well.

## II.

"Fraud can . . . be broken into two categories, actual and constructive. Actual fraud is the more common type, arising from arm's length transactions." *Terry v. Terry*, 302 N.C. 77, 82, 273 S.E.2d 674, 677 (1981). Arm's-length transactions encompass "dealings between two parties who are not related or not on close terms and who are presumed to have roughly equal bargaining power; not involving a confidential relationship." [A]*rm's-length, Black's Law Dictionary* 116 (8th ed. 2007). "Transaction" read broadly encompasses an "act or an instance of conducting business or other dealings," especially "the formation, performance, or discharge of a contract."

*Transaction, id.* at 1535. To successfully assert an allegation of actual fraud, the plaintiff must plead five elements: "(1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Watts v. Cumberland Cty. Hosp. Sys., Inc.,* 317 N.C. 110, 116-17, 343 S.E.2d 879, 884 (1986) (quoting *Terry,* 302 N.C. at 83, 273 S.E.2d at 677). "Additionally, any reliance on the allegedly false representations must be reasonable." *Forbis v. Neal,* 361 N.C. 519, 527, 649 S.E.2d 382, 387 (2007) (citation omitted). Whether each of the elements of actual fraud and reasonable reliance are met are ordinarily questions for the jury "unless the facts are so clear that they support only one conclusion." *See id.* at 527, 649 S.E.2d at 387 (citation omitted).

"Constructive fraud arises where a confidential or fiduciary relationship exists, and its proof is less 'exacting' than that required for actual fraud." *Watts,* 317 N.C. at 115-16, 343 S.E.2d at 884 (quoting *Terry,* 302 N.C. at 83, 273 S.E.2d at 677). "When a fiduciary relation exists between parties to a transaction, equity raises a presumption of fraud when the superior party obtains a possible benefit." *Id.* at 116, 343 S.E.2d at 884 (citation omitted). To assert a cause of action for constructive fraud, the plaintiff must allege facts and circumstances "(1) which created the relation of trust and confidence, and (2) led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of

trust to the hurt of plaintiff." *Rhodes v. Jones*, 232 N.C. 547, 549, 61 S.E.2d 725, 726 (1950).

"Though difficult to define in precise terms, a fiduciary relationship is generally described as arising when 'there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence.'" *Dallaire v. Bank of Am.*, 367 N.C. 363, 367, 760 S.E.2d 263, 266 (2014) (quoting *Green v. Freeman*, 367 N.C. 136, 141, 749 S.E.2d 262, 268 (2013) (citations omitted)). All fiduciary relationships are characterized by "a heightened level of trust and the duty of the fiduciary to act in the best interests of the other party." *Dallaire*, 367 N.C. at 367, 760 S.E.2d at 266. Specifically, a fiduciary relationship arises whenever "there is confidence reposed on one side[ ], and resulting domination and influence on the other." *Abbitt v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931) (quoting 25 C.J. *Fiduciary* § 9, at 1119 (1921)).

Here plaintiff's evidence, viewed in the light most favorable to plaintiff, raises genuine issues of material fact regarding the fraudulent concealment claim based on theories of both actual and constructive fraud. The record is replete with evidence that indicates an ongoing professional relationship between plaintiff and defendants until the tax returns were actually filed in September and October 2012. Despite the continued requests and inquiries from plaintiff and Roddy, defendants failed to provide the completed 2006 or 2007 tax returns for a year. Even after plaintiff

notified Towson of her intent to change accountants, at Towson's request, plaintiff and Towson proceeded as if the relationship were unchanged regarding the disputed tax returns. Significantly, Towson electronically filed plaintiff's 2010 federal return on 21 November 2011, well after 27 September 2011 when plaintiff informed him she was leaving the accounting firm. Towson even requested that plaintiff execute a power of attorney to facilitate the continued representation, which she did. Furthermore, at Towson's request, plaintiff signed signature pages for the 2006 and 2007 tax returns so Towson could file them. Moreover, for months, Towson engaged in communications with the IRS on plaintiff's behalf, but falsely represented to plaintiff and Roddy the nature, frequency, and content of those conversations. Yet throughout these communications, Towson never informed plaintiff that the 2006 and 2007 tax returns were never filed, maintaining until the end that IRS processing errors caused the problems. Plaintiff continued to place trust in Towson to work with the IRS on her behalf to resolve the problems. Absent these misrepresentations, plaintiff may have been able to resolve the failure to file the returns sooner and without injury.

Taking the facts in the light most favorable to her, plaintiff has presented adequate evidence of both actual and constructive fraud to survive summary judgment. Plaintiff had an ongoing professional relationship with defendant related to the preparation and filing of her delinquent tax returns. Defendants knowingly misrepresented the status of the returns and negotiations with the IRS. The evidence

could support a heightened relationship of trust needed for constructive fraud. At a minimum, even if the parties' dealings were determined to be at "arm's-length," plaintiff has presented evidence to support her actual fraud claim. Her evidence shows she reasonably relied on Towson to perform and complete his professional services. Thus, taking the evidence in the light most favorable to the nonmoving party, genuine issues of material fact exist. Because plaintiff's claim for fraudulent concealment survives summary judgment so does her claim for punitive damages. Therefore, we reverse the decision of the Court of Appeals affirming the trial court's grant of summary judgment to defendants on plaintiff's claims for fraudulent concealment and punitive damages.

III.

We next consider whether the statute of repose bars plaintiff's professional negligence claim. We have consistently recognized that a party must initiate an action within the time frame designated by a statute of repose. *E.g.*, *Hargett v. Holland*, 337 N.C. 651, 653, 447 S.E.2d 784, 786 (1994). "Unlike statutes of limitations, which run from the time a cause of action accrues, '[s]tatutes of repose . . . create time limitations which are not measured from the date of injury.' " *Id.* at 654, 447 S.E.2d at 787 (alterations in original) (quoting *Trs. of Rowan Tech. Coll. v. J. Hyatt Hammond Assocs.*, 313 N.C. 230, 234 n.3, 328 S.E.2d 274, 277 n.3 (1985)); *accord Christie v. Hartley Constr., Inc.*, 367 N.C. 534, 539, 766 S.E.2d 283, 287 (2014)

("The time of the occurrence or discovery of the plaintiff's injury is not a factor in the operation of a statute of repose.").

A statute of repose establishes "a condition precedent" which must be satisfied "for a cause of action to be recognized. If the action is not brought within the specified period, the plaintiff 'literally has *no* cause of action. The harm that has been done is . . . a wrong for which the law affords no redress.' " *Hargett,* 337 N.C. at 655, 447 S.E.2d at 787 (quoting *Boudreau v. Baughman,* 322 N.C. 331, 340-41, 368 S.E.2d 849, 857 (1988) (quoting *Rosenberg v. Town of North Bergen,* 61 N.J. 190, 199, 293 A.2d 662, 667 (1972))). "Thus, the repose serves as an unyielding and absolute barrier that prevents a plaintiff's right of action even before his cause of action may accrue . . . ." *Hargett*, 337 N.C. at 655, 447 S.E.2d at 788 (quoting *Black v. Littlejohn*, 312 N.C. 626, 633, 325 S.E.2d 469, 475 (1985)). "The plaintiff has the burden of proving that a statute of repose does not defeat the claim." *Christie*, 367 N.C. at 539, 766 S.E.2d at 287 (citing *Hargett*, 337 N.C. at 654, 447 S.E.2d at 787).

For professional negligence claims, the statute of repose begins running at "the last act of the defendant giving rise to the cause of action." N.C.G.S. § 1-15(c) (2017). To determine when the last act occurred, we consider the contractual relationship between the parties and when the contracted-for services were completed. *See Hargett*, 337 N.C. at 658, 447 S.E.2d at 789 ("[T]he contractual arrangement between attorney and client . . . determine[s] the extent of the attorney's duty to the client and the end of the attorney's professional obligation."). *Compare id.* at 655, 657-58, 447

S.E.2d at 788-89 (Attorney's contracted-for duty involved simply preparing and supervising the execution of a will.), *with Sunbow Indus., Inc. v. London*, 58 N.C. App. 751, 753, 294 S.E.2d 409, 410, *disc. rev. denied*, 307 N.C. 272, 299 S.E.2d 219 (1982) (Attorney's contracted-for services imposed a duty to represent the plaintiff during closing and a continuing duty to perfect plaintiff's security interest by filing the financing statement.).

Here plaintiff presented substantial evidence raising a genuine issue of material fact regarding the scope of the parties' contractual relationship and when the corresponding last act occurred. Viewed in the light most favorable to the nonmoving party, the parties' agreement included both preparing and filing plaintiff's tax returns and negotiations with the IRS. Viewing the evidence of the contracted-for services in the light most favorable to plaintiff, defendants' last act did not occur until September 2012 when Towson filed the 2006 and 2007 returns. Additionally, plaintiff presented substantial evidence that defendants did not even prepare or complete the 2006 and 2007 tax returns until defendants filed them. Thus, because plaintiff presented substantial evidence of genuine issues of material fact regarding when the statute of repose began to run, plaintiff's professional negligence claim survives summary judgment, and we affirm the holding of the Court of Appeals on that issue.

IV.

We therefore conclude that genuine issues of material fact exist regarding the fraudulent concealment claim and the accompanying punitive damages claim, as well as the triggering event for the running of the statute of repose, and that the trial court erred in granting defendants' motion for partial summary judgment. Accordingly, the decision of the Court of Appeals is reversed in part and affirmed in part, and this case is remanded to that court for further remand to the trial court for proceedings consistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

Justice BEASLEY concurring in part and dissenting in part.

I agree with the holding of the majority that there are genuine issues of material fact regarding (1) when plaintiff's professional negligence claim accrued under the statute of repose and (2) plaintiff's fraudulent concealment claim under a theory of actual fraud. Because plaintiff failed to plead a constructive fraud theory supporting her claim for fraudulent concealment in her complaint, however, I would hold that plaintiff is procedurally barred from asserting a constructive fraud theory on remand from this Court.

While North Carolina is a "notice pleading" jurisdiction, requiring generally that complaint allegations provide a "short and plain statement of the claim sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved showing that the pleader is entitled to relief," N.C.G.S. § 1A-1, Rule 8(a)(1) (2017), plaintiff's allegations were insufficient to put defendants on notice of a constructive fraud theory supporting plaintiff's fraudulent concealment claim. Pleading standards for fraud claims under North Carolina law are even more exacting. *See id.* Rule 9(b) (2017) (requiring plaintiffs asserting fraud claims to plead "the circumstances constituting fraud . . . with particularity"). As the majority recognizes, "[t]o assert a cause of action for constructive fraud, the plaintiff must allege facts and circumstances '(1) which created the relation of trust and confidence, and (2) led up

-1-

to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff.' " *Rhodes v. Jones*, 232 N.C. 547, 549, 61 S.E.2d 725, 726 (1950). Here, plaintiff failed to plead facts *with or without* particularity supporting the existence of a relationship of trust and confidence between plaintiff and defendants: she did not plead the existence of a fiduciary relationship, or that she placed any special trust or confidence in defendants beyond that which any client places in his or her accountant, or that defendants owed her an independent duty to disclose that her returns were not filed. Instead, plaintiff pleaded that defendant Towson "concealed the fact that [her] 2006 and 2007 federal tax returns had not been filed with the IRS," that the "concealment was reasonably calculated to deceive" and "made with the intent to deceive," that she actually was deceived, and that, consequently, she was damaged by defendants' concealment. These are the classic elements of an actual fraud theory for fraudulent concealment, but they fall short of putting defendants on notice that plaintiff was claiming a constructive fraud theory.

Thus, when defendants moved for summary judgment on the plaintiff's claim for fraudulent concealment, plaintiff had no constructive fraud theory properly before the trial court. Despite defendants' repeated efforts to extinguish this would-be claim on grounds of plaintiff's procedural default, both in their arguments before the trial court in response to plaintiff's summary judgment arguments and in their briefs to the Court of Appeals and this Court, the majority erroneously allows

plaintiff to raise a new, unpleaded cause of action in response to defendant's summary judgment motion. Although I concur with the remainder of the majority's reasoning and holding, I dissent from the majority's holding that plaintiff may proceed on a constructive fraud theory of fraudulent concealment on remand.