Fin. Carrier Servs. LLC v. Kingpin Cap. Inc., 2025 NCBC 27.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
24CV055870-590

FINANCIAL CARRIER SERVICES
LLC d/b/a TBS CHARLOTTE,

Plaintiff,

v.

KINGPIN CAPITAL INC. and RYAN
MCCRAY, AN INDIVIDUAL,

Defendants.

**ORDER AND OPINION
ON MOTION TO DISMISS**

1.     Ryan McCray was once an employee of Financial Carrier Services LLC (or FCS for short).  In 2024, he resigned and began working for a competitor, Kingpin Capital Inc.  In this lawsuit, FCS alleges that McCray and Kingpin are competing unfairly by using its trade secrets and confidential information to solicit its customers.  McCray and Kingpin have moved to dismiss the amended complaint in its entirety.  For the following reasons, the Court **GRANTS in part** and **DENIES in part** the motion to dismiss.

> *Taylor English Duma, LLP, by Ryan M. Arnold, and Buchalter, a Professional Corporation, by Alison M. Ballard and Andrew H. Pinter, for Plaintiff Financial Carrier Services LLC d/b/a TBS Charlotte.*
>
> *Bradley Arant Boult Cummings LLP, by C. Bailey King, Jr. and Tamara R. Boles, for Defendants Kingpin Capital Inc. and Ryan McCray.*

Conrad, Judge.

# I.
# BACKGROUND

2. The Court does not make findings of fact on a motion to dismiss. The following background assumes that the allegations of the amended complaint are true.

3. FCS is a Delaware LLC based in North Carolina. It offers "factoring and financing services for companies in the logistics and transportation industries." (Am. Compl. ¶¶ 1, 9, ECF No. 24.)

4. McCray joined FCS more than a decade ago. At some point, he became the company's Client Services Supervisor with responsibility for managing its customer accounts and supervising its customer service employees. As alleged, "McCray was the 'face' of FCS," trusted with wide-ranging access to strategic, financial, and customer-specific information. As a condition of his employment, he signed an employment agreement containing provisions that broadly restrict his right to compete against the company, solicit its customers, and use its confidential information. (*See, e.g.*, Am. Compl. ¶¶ 19, 21–26, 28–30, 32, 33.)

5. McCray resigned from FCS in early 2024 and took a similar customer service position with Kingpin. Over the next several months, at least eleven customers abandoned FCS in favor of Kingpin. All eleven had fallen under McCray's purview—either directly or in his supervisory capacity—while he was employed by FCS. Suspecting foul play, FCS sent cease-and-desist letters to McCray and Kingpin in which it accused McCray of breaching his employment agreement and demanded information about his activities on Kingpin's behalf. A flurry of correspondence

followed. Among other things, counsel for McCray and Kingpin questioned the authenticity of McCray's employment agreement and produced a second version purporting to have more favorable restrictive covenant terms. After investigating, FCS concluded that this second version was fraudulent. (*See, e.g.*, Am. Compl. ¶¶ 49, 51, 52, 63, 64, 89, 90, 92, 93, 103, 135–40, 144–47.)

6. In this case, FCS alleges that McCray shared its confidential information with Kingpin and that Kingpin used that information to gain a market advantage and lure away FCS's customers. FCS's amended complaint includes claims against McCray for breach of contract and misappropriation of trade secrets. It also includes claims against both McCray and Kingpin for tortious interference with contract, unfair or deceptive trade practices under N.C.G.S. § 75-1.1, fraud, and injunctive relief.

7. McCray and Kingpin have jointly moved to dismiss all claims. (*See* ECF No. 28.) After reviewing the parties' briefs, the Court concludes that oral argument would not aid its decision and therefore elects to decide the motion without a hearing. *See* BCR 7.4.

## II.
## ANALYSIS

8. A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of the complaint." *Isenhour v. Hutto*, 350 N.C. 601, 604 (1999) (citation and quotation marks omitted). The motion should be granted only when "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses

some fact that necessarily defeats the plaintiff's claim." *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (citation and quotation marks omitted).

9.   In deciding the motion, the Court must treat the well-pleaded allegations of the complaint as true and view the facts and permissible inferences "in the light most favorable to" the nonmoving party. *Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332 (2019) (citation and quotation marks omitted). Exhibits to the complaint are deemed to be part of it and may also be considered, *see Krawiec v. Manly*, 370 N.C. 602, 606 (2018), but the Court need not accept as true any "conclusions of law or unwarranted deductions of fact," *Wray v. City of Greensboro*, 370 N.C. 41, 46 (2017) (citation and quotation marks omitted).

A.   Misappropriation of Trade Secrets

10.   "To plead misappropriation of trade secrets, a plaintiff must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur." *Krawiec*, 370 N.C. at 609 (citation and quotation marks omitted). McCray and Kingpin contend that the amended complaint fails to meet this standard. The Court agrees.

11.   FCS identifies its trade secrets in vague, conclusory terms: "customer lists, information concerning FCS's customers and business partners, internal operational information, business and marketing strategies, and other non-public, proprietary information." (Am. Compl. ¶ 213.) At no point does the amended complaint "put defendants on notice as to the precise information allegedly misappropriated."

*Kraweic*, 370 N.C. at 611 (deeming "original ideas and concepts for dance productions, marketing strategies and tactics, as well as student, client and customer lists and their contact information" to be insufficiently particular); *see also Design Gaps, Inc. v. Hall*, 2024 NCBC LEXIS 64, at *9 (N.C. Super. Ct. May 1, 2024).

12. In its opposition brief, FCS argues that paragraphs 29 through 31 of its amended complaint provide additional particularity. They do not. These paragraphs are equally vague, referring to "business development strategies and goals," "knowledge of [FCS's] operations," the "specific needs" of customers, "how to best market and position factoring services to" customers, and customer "business practices and plans for future business." (Am. Compl. ¶ 29.) There is "no further detail about these" generically described strategies, goals, needs, and plans. *Kraweic*, 370 N.C. at 611. Nor does FCS explain how it developed, maintained, and protected this information.

13. Accordingly, the Court concludes that FCS has not identified its trade secrets with sufficient particularity and grants the motion to dismiss the claim for misappropriation of trade secrets.

## B. Breach of Contract

14. FCS claims that McCray breached the noncompetition, customer nonsolicitation, and confidentiality clauses in his employment agreement. (FCS does not claim that McCray breached a different clause that restricts his right to solicit its employees.) McCray contends that the noncompetition and customer nonsolicitation

clauses are unenforceable and that FCS has not adequately alleged a breach of the confidentiality clause.

15. **Noncompetition.** Our appellate courts have stressed that "covenants not to compete between an employer and employee are not viewed favorably in modern law." *Farr Assocs., Inc. v. Baskin*, 138 N.C. App. 276, 279 (2000) (cleaned up). The covenant "must be no wider in scope than is necessary to protect the business of the employer." *VisionAIR, Inc. v. James*, 167 N.C. App. 504, 508 (2004). "If a contract by an employee in restraint of competition is too broad to be a reasonable protection to the employer's business it will not be enforced." *Whittaker Gen. Med. Corp. v. Daniel*, 324 N.C. 523, 528 (1989).

16. McCray's noncompetition clause is facially overbroad. In sweeping terms, it states that he "shall not in any way or capacity"—including as "an employee," "investor," or "otherwise"—"directly or indirectly . . . [s]ell or provide financial services to any Company Customer in the United States" for one year after the end of his employment with FCS. (Am. Compl. Ex. A § 3, ECF No. 24.2.) This language is so broad that it purports to bar McCray not only from doing the kind of work he did for FCS but also wholly unrelated work. What's more, the clause would bar him from holding an indirect investment interest (through a mutual fund, for example) in virtually any financial services company, including those that do not compete with FCS. Simply put, this clause is indistinguishable from similar clauses that this Court and our appellate courts have deemed to be overbroad and unenforceable. *See, e.g.*, *VisionAIR*, 167 N.C. App. at 509 (discussing clause that would prohibit employee

from "holding interest in a mutual fund invested in part in a firm engaged in business similar to [the employer]"); *see also Prometheus Grp. Enters., LLC v. Gibson*, 2023 NCBC LEXIS 42, at *13–15 (N.C. Super. Ct. Mar. 21, 2023) (collecting cases); *InVue Sec. Prods., Inc. v. Stein*, 2017 NCBC LEXIS 115, at *13 (N.C. Super. Ct. Dec. 18, 2017) (same).

17. FCS urges the Court to apply the blue-pencil rule to save the clause. In theory, the Court could choose not to enforce "a distinctly separable part of the covenant" while enforcing the rest. *Hartman v. W.H. Odell & Assocs.*, 117 N.C. App. 307, 317 (1994). Here, though, FCS seeks to rewrite the clause by excising integral phrases ("directly or indirectly" and "financial services"). As in another recent case, "[t]he Court will not exercise its discretion to blue pencil a provision that was not clearly drafted to be divisible." *Prometheus*, 2023 NCBC LEXIS 42, at *20–21.

18. Because the noncompetition clause is facially overbroad and unenforceable, the Court grants the motion to dismiss FCS's claim for breach of the clause.

19. **<u>Nonsolicitation.</u>** The customer nonsolicitation clause is also unenforceable. Again, the employment agreement uses sweeping terms: for one year after his employment, McCray "shall not in any way or capacity . . . directly or indirectly" either (1) "[s]olicit any Company Customer for the purpose of selling or providing factoring services to such Company Customer in the United States" or (2) "[f]actor for, or solicit or otherwise do business with, any Company Client in the course of engaging in financial service business in the United States." (Am. Compl.

Ex. A § 3.) A "Company Customer" includes FCS's actual and prospective customers in the year leading up to McCray's resignation. (*See* Am. Compl. Ex. A § 2(b).)

20. Read literally, this clause would bar McCray from doing any financial service business in any capacity, even indirectly, with any FCS customer in the United States. That is inordinately expansive. FCS insists that the scope is reasonable because McCray was aware of and had some contact with all its customers. But FCS alleges only that he "was the direct, front-line client contact for a *significant portion* of FCS's customer base." (Am. Compl. ¶ 24 (emphasis added).) The clause purports to bar him from directly or indirectly doing business with FCS's entire customer base—including the portion with which he had minimal or merely indirect contact and even prospective customers with which he may have had no contact at all. *See Prometheus*, 2023 NCBC LEXIS 42, at *22–23 (concluding that similar clause was overbroad); *Mech. Sys. & Servs. v. Howard*, 2021 NCBC LEXIS 69, at *9–10 (N.C. Super. Ct. Aug. 11, 2021) (collecting cases).

21. Because the nonsolicitation clause is facially overbroad and unenforceable, the Court grants the motion to dismiss FCS's claim for breach of the clause.

22. **Confidentiality.** Courts do not scrutinize confidentiality clauses as heavily as restrictive covenants. Indeed, McCray and Kingpin do not contend that the confidentiality clause in McCray's employment agreement is unenforceable. Rather, they contend that FCS has not adequately alleged a breach. The Court disagrees. Claims for breach of contract are not subject to heightened pleading standards. The particularity requirement that applies to trade-secret claims does not apply here, for

example. FCS has alleged that McCray acquired confidential business and financial information, that he disclosed this information to Kingpin, and that McCray and Kingpin used this information to steal clients and otherwise compete unfairly. (*See, e.g.*, Am. Compl. ¶¶ 143–47.) These allegations are not conclusory, and taken as true, they suffice to state a claim. The Court therefore denies the motion to dismiss the claim for breach of the confidentiality clause in McCray's employment agreement.

## C. Tortious Interference with Contract

23. To state a claim for tortious interference with contract, the plaintiff must allege that a valid contract exists between it and a third person and that the defendant knew of the contract, intentionally induced the third person not to perform the contract, did so without justification, and caused actual damage. *See Embree Constr. Grp., Inc. v. Rafcor, Inc.*, 330 N.C. 487, 498 (1992). Inducement generally requires purposeful conduct by the defendant. *See, e.g.*, *Gallaher v. Ciszek*, 2020 NCBC LEXIS 124, at \*16 (N.C. Super. Ct. Oct. 16, 2020).

24. FCS claims, first, that Kingpin tortiously interfered with McCray's employment agreement by causing him to breach its noncompetition, customer nonsolicitation, and confidentiality clauses. It also claims that McCray and Kingpin unlawfully induced its customers to terminate their contracts with it. McCray and Kingpin argue that these claims must be dismissed because they are based on unenforceable restrictive covenants and because any interference with FCS's customer contracts was justified.

25. Having held that McCray's noncompetition and nonsolicitation clauses are unenforceable, the Court concludes that they "cannot support" FCS's "claim for tortious interference with contract." *Phelps Staffing, LLC v. C.T. Phelps, Inc.*, 226 N.C. App. 506, 512 (2013); *see also Design Gaps*, 2024 NCBC LEXIS 64, at *10 (dismissing tortious interference claim based on unenforceable noncompetition and nonsolicitation covenants).

26. But the claim for breach of the confidentiality clause remains. Market competition may justify "interference in another's business relations" but only "so long as it is carried on in furtherance of one's own interests and *by means that are lawful.*" *Peoples Sec. Life Ins. Co. v. Hooks*, 322 N.C. 216, 221 (1988) (emphasis added). As alleged, McCray and Kingpin competed by unlawful means. Liberally construed, the amended complaint alleges that Kingpin knew of McCray's nondisclosure obligation, Kingpin induced McCray to breach that obligation, and Kingpin and McCray used FCS's confidential information to induce its customers to terminate their contracts. (*See* Am. Compl. ¶¶ 168, 170, 177.) The Court concludes that these allegations, taken as true, suffice to state a claim.

27. Accordingly, the Court grants the motion to dismiss the claims for tortious interference to the extent premised on the noncompetition and customer nonsolicitation clauses but otherwise denies the motion to dismiss the claims.

## D. Section 75-1.1

28. FCS's section 75-1.1 claims appear to be predicated on its underlying claims for tortious interference with contract, but not its claims for breach of contract and

misappropriation of trade secrets. (*See* Am. Compl. ¶¶ 197, 206 (referring to McCray's and Kingpin's "tortious interference").) McCray and Kingpin offer no independent reason to dismiss the section 75-1.1 claims apart from those related to the claims for tortious interference discussed above. Thus, the Court concludes that the section 75-1.1 claims shall proceed to the same extent as the tortious interference claims.

### E. Fraud

29. In prelitigation discussions, counsel for McCray and Kingpin questioned the authenticity of McCray's employment agreement and produced a materially different version of it. FCS alleges that this second version is a fake. FCS also alleges that McCray and Kingpin knew that the document was fake at the time and produced it with the intent to deceive. These allegations form the basis for FCS's fraud claim.

30. The Court concludes that this claim has multiple pleading defects. As McCray and Kingpin correctly observe, FCS has not alleged that it reasonably relied on any representations about the disputed version of the employment agreement. As alleged, FCS received the document, questioned its authenticity, conducted an investigation, determined that it was fake, and carried on with this lawsuit. (*See, e.g.*, Am. Compl. ¶¶ 95, 109, 129, 130.) The amended complaint does not include an allegation that FCS was deceived or that it relied on any representation by McCray and Kingpin—a necessary allegation. Moreover, even if FCS had alleged that it was deceived, it does not allege how it was harmed. What FCS alleges is that the uncertainty surrounding the disputed version caused it to forgo any effort to seek

injunctive relief to enforce the noncompetition and nonsolicitation clauses in the real version of McCray's employment agreement. But those clauses are unenforceable for the reasons stated above. Thus, it would have been fruitless to seek injunctive relief, and the lost opportunity to do so did not harm FCS. *See Head v. Gould Killian CPA Grp., P.A.*, 371 N.C. 2, 9 (2018) (identifying deception, reasonable reliance, and injury as essential elements of fraud).

31. Accordingly, the Court grants the motion to dismiss the claim for fraud.

### F. Injunctive Relief

32. Injunctions are remedies, not independent causes of action. *See Revelle v. Chamblee*, 168 N.C. App. 227, 230 (2005). The Court therefore grants the motion to dismiss the standalone claim for injunctive relief. That said, FCS may be able to seek injunctive relief as a remedy if it prevails on its other remaining claims. Thus, the dismissal is without prejudice to FCS's ability to move for an injunction as a remedy at the appropriate time.

### IV.
### CONCLUSION

33. For these reasons, the Court **GRANTS** in part and **DENIES** in part the motion to dismiss as follows:

    a. The Court **DISMISSES** with prejudice the claims for misappropriation of trade secrets, breach of the noncompetition clause, breach of the customer nonsolicitation clause, tortious interference with contract (only to the extent based on the noncompetition and customer nonsolicitation

clauses), and violations of section 75-1.1 (only to the extent based on the noncompetition and customer nonsolicitation clauses).

b.  The Court **DISMISSES** the remedial claim for injunctive relief without prejudice to FCS's ability to move for injunctive relief as a remedy at the appropriate time.

c.  The Court **DENIES** the motion in all other respects.

**SO ORDERED**, this the 19th day of June, 2025.

　　　　　　　　　　　　 /s/ Adam M. Conrad　　　　　
　　　　　　　　　　　　Adam M. Conrad
　　　　　　　　　　　　Special Superior Court Judge
　　　　　　　　　　　　 for Complex Business Cases